Stephen F. MOYER, Plaintiff–
Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 98–5165.

United States Court of Appeals,
Federal Circuit.

Sept. 2, 1999.

Norton C. Joerg, Upper Marlboro, Maryland, argued, for plaintiff-appellant. With him on the brief was William S. Aramony, Alexandria, Virginia.

F. Jefferson Hughes, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued, for defendant-appellee. With him on the brief were David M. Cohen, Director, and James M. Kinsella, Assistant Director. Of counsel on the brief was Lt. Col. Terry L. Elling, U.S. Army Litigation Division, Arlington, Virginia. Also on the brief was Capt. Joanne P. Tetreault.

Before MAYER, Chief Judge, MICHEL and LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

Stephen F. Moyer ("Moyer") appeals from the judgment of the United States Court of Federal Claims, which dismissed his complaint for lack of jurisdiction. *See Moyer v. United States,* 41 Fed.Cl. 324 (1998). In his complaint, Moyer, a former member of the United States Army ("Army"), sought correction of his military records, and back pay, allowances, retirement pay, and severance pay that he would have received had he been medically discharged, as he alleges he would have been if he had not been wrongfully discharged pursuant to his tendered resignation. Moyer submitted his resignation in lieu of trial by court-martial on pending charges under the Uniform Code of Military Justice ("UCMJ"). The Court of Federal Claims granted the government's motion to dismiss for lack of jurisdiction because it rejected both of Moyer's theories of jurisdiction. First it found that Moyer resigned voluntarily and not, as he alleged, because of misrepresentations. Second, it ruled that his alternative theory of jurisdiction—alleged non-compliance with an Army regulation—was legally incorrect. According to Moyer, his resignation was the product of misinformation rather than solely from an impending

court-martial and Army regulations required that his medical discharge be processed before his discharge pursuant to his resignation became final, even if he did tender his resignation voluntarily. Because the Court of Federal Claims did not clearly err in finding that Moyer had voluntarily resigned and correctly concluded that his regulatory claim was legally incorrect, we affirm.

## BACKGROUND

In December 1990, while serving as a Captain in the Army, Moyer sought medical evaluation of an injury dating back to 1983 for which he had subsequently received treatment on numerous occasions. On January 4, 1991, Moyer underwent a further physical examination related to ongoing medical problems, including injuries to his shoulder and ankles. The Report of Medical Examination indicated, in the space on the report reserved for "purpose," that the examination was "periodic" and "med board."

Also in December 1990, Moyer became the focus of an Army investigation based on allegations that he had compromised classified information. On February 13, 1991, charges were filed against Moyer under the UCMJ, and on March 14 an additional charge was filed. The charges were that Moyer had violated Army regulations pertaining to handling classified information and that he had committed adultery. On March 22, 1991, the charges were referred for trial by general court-martial.

On March 25, 1991, only three days later, Moyer submitted a request for resignation, apparently to avoid trial by court-martial. In his resignation letter Moyer indicated that he was voluntarily tendering his resignation for the good of the service, that he had not been subject to coercion with respect to his resignation, that he had been advised of and fully understood the

implications of his resignation, and that he understood that he was forfeiting all rights stemming from his time in service. On April 23, 1991, Moyer's resignation was approved, and he was so notified by letter dated May 21, 1991. Moyer's scheduled separation date was June 4, 1991.

On April 17, several weeks after his resignation and a day after a further medical examination, a memorandum reflected that Moyer was undergoing a Medical Evaluation Board (an "MEB"), which ordinarily can lead to a discharge based upon disability. An MEB report was issued on May 10, 1991, indicating that Moyer was unfit to continue active duty. On May 24, 1991, Moyer requested an extension of his separation date so that the Army could consider discharging him for medical disability. On May 30, the hospital treating Moyer also requested that his separation date be moved beyond June 4 to December 3, 1991, because Moyer was being processed through the Army Physical Disability System and final action in that system would not be taken by June 4. However, the Deputy Assistant Secretary of the Army denied the request for an extension, and on June 6, 1991, Moyer was discharged without regard to any disability.

Later, Moyer, now a civilian, petitioned the Army Board for Correction of Military Records ("ABCMR") for relief, but it was denied. In his complaint in the Court of Federal Claims, Moyer challenged the ABCMR's denial of his application to correct his military records to show that he was discharged due to physical disability, rather than as a result of his resignation. He also sought back pay, allowances, retirement pay, and severance pay.

In response to the government's motion to dismiss for lack of jurisdiction because of his resignation, Moyer argued before the Court of Federal Claims, as he does here, that his resignation was not voluntary because he was misled into believing

that his resignation would be held in abeyance until his medical disability processing was completed and that, if found disabled, he would be medically discharged rather than discharged pursuant to his resignation. Moyer alleged that his supervisor, Captain David Oten, and his attorney, Captain Richard Jaynes, both misled him prior to his request to resign by indicating that his discharge for disability would be processed simultaneously with consideration of his resignation request. Both men denied this version of the course of events preceding Moyer's resignation. Captain Oten said that he could not recollect giving Moyer any advice and that if he had, he could not imagine giving the advice Moyer alleged. Captain Jaynes claimed that he was not even told by Moyer about a request for a medical discharge until May 7, 1991, after Moyer had resigned. Other documents also indicate that the MEB process did not begin until after Moyer submitted his resignation on March 25, including an April 17 memorandum indicating that he wàs going before the MEB. In an attempt to show that he believed he was being medically processed out of the Army at the time he resigned, Moyer contended that his January 1991 medical evaluation report which includes a notation "med board" indicates that the MEB process was initiated at that point in time, i.e., prior to his resignation, rather than on April 17.

The government moved: (1) for dismissal for lack of jurisdiction; (2) for dismissal for failure to state a claim upon which relief could be granted; and (3) for summary judgment on the administrative record. Moyer cross-moved for summary judgment. The Court of Federal Claims granted only the government's motion to dismiss the complaint for lack of jurisdiction.

The Court of Federal Claims found that Moyer failed to show that he pursued a discharge based on physical disability prior to his voluntary resignation, and failed to show that either Captains Oten or Jaynes misled him prior to the resignation by indicating that such resignation would be processed simultaneously and subordinate to a disability-based discharge. The Court of Federal Claims found that the "stray reference to a 'med board'" in Moyer's medical records was insignificant in light of other records indicating that the MEB process began in April 1991, the corroborating testimony of Captain Jaynes, and the May 24 letter of Moyer himself, requesting an extension of the separation date. *See Moyer,* 41 Fed.Cl. at 329–30. Accordingly, in a careful opinion with detailed findings, the Court of Federal Claims found that Moyer's resignation was voluntary.

The Court of Federal Claims also briefly addressed Moyer's argument, in Count I of his complaint, that Army regulations required that his medical discharge request be processed prior to a discharge pursuant to his offer to resign. *See id.* at 327 n. 1. The Court of Federal Claims noted that Moyer could not possibly be entitled to such processing because the provisions relied on by Moyer only applied to those who are "administratively discharged." By contrast, Moyer was discharged pursuant to a resignation submitted in lieu of a trial by court-martial. The court indeed noted that the regulation expressly excluded those facing charges under the UCMJ.

On appeal, Moyer contends that his resignation was not voluntary and that his regulatory count provided an alternative basis for Court of Federal Claims jurisdiction, even if the resignation was found voluntary.[1] We have jurisdiction under 28 U.S.C. § 1295(a)(3) (1994).

## DISCUSSION

### I.

■ A trial court's ruling on its own jurisdiction is a question of law which we

---

1. Moyer also argues that the Court of Federal Claims did not allow enough discovery before

deciding the jurisdictional issue, and that he had a constitutionally inadequate opportunity

review *de novo.* *See James M. Ellett Const. Co. v. United States,* 93 F.3d 1537, 1541 (Fed.Cir.1996). Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint (here, alleged involuntariness) are challenged. *See Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988) ("If a motion to dismiss for lack of subject matter jurisdiction, however, challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute."). Factual findings made by the Court of Federal Claims are reviewed by us for clear error. *See H.B. Mac, Inc. v. United States,* 153 F.3d 1338, 1343 (Fed.Cir.1998).

■ Under the Tucker Act, when a cause of action is not based upon breach of contract against the government, the Court of Federal Claims has jurisdiction only over those constitutional provisions, statutes, or regulations that by their terms entitle a plaintiff to money. *See* 28 U.S.C. § 1491(a)(1) (1994); *Tippett v. United States,* 185 F.3d 1250 (Fed.Cir.1999). We usually refer to such a provision as "money-mandating." *See Tippett,* 185 F.3d at 1255. We have previously stated that if a resignation or retirement is voluntary, then the Court of Federal Claims lacks jurisdiction to decide a back pay claim. *See Sammt v. United States,* 780 F.2d 31, 32–33 (Fed.Cir.1985) ("If [the claimant's] retirement was voluntary, no jurisdiction resides in the Court of Federal Claims. . . . That choice deprives the Court of Federal Claims of jurisdiction."). The basis for this conclusion is that a voluntary resignation generally obviates otherwise applicable statutory entitlements to compensation, thus precluding jurisdiction under the Tucker Act. *See Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir.1995) ("If, however, [the claimant's] retirement was

'voluntary,' he retained no statutory entitlement to compensation, and thus no money-mandating provision would support Tucker Act jurisdiction over his claim." (citing *Sammt* )); *Tippett,* 185 F.3d at 1255 (citing *Adkins* ).

■ However, when we held in *Sammt* that the Court of Federal Claims should have dismissed for "lack of jurisdiction" because Sammt's retirement was voluntary, *see* 780 F.2d at 33, we did not mean that the Court of Federal Claims was not empowered to adjudicate voluntariness or other issues bearing on jurisdiction, even if also pertinent to the merits. The Court of Federal Claims "obviously has jurisdiction to determine if it has jurisdiction" over a particular matter, *Widdoss v. Secretary of the Department of Health and Human Services,* 989 F.2d 1170, 1177 (Fed.Cir. 1993), which necessarily includes jurisdiction to determine whether a resignation was voluntary. Thus, we used the "lack of jurisdiction" terminology in *Sammt* merely as shorthand for the proposition that, once found to be voluntary, retirement or resignation generally eliminates the possibility of Tucker Act jurisdiction, thus depriving the Court of Federal Claims of authority to decide liability and, where it is found, damages and other relief.

We also do not interpret the "lack of jurisdiction" holding in *Sammt* as stating that jurisdiction can never exist, under any circumstances, once a resignation is found to be voluntary. In *Sammt,* a retired service member, Carl Sammt ("Sammt"), brought an action seeking back pay and correction of military records. Sammt had unilaterally retired, effective October 31, 1977. If he did not elect to retire at that time, he would have faced mandatory (involuntary) retirement on December 1, 1977. *See Sammt,* 780 F.2d at 32. The key issue before the Claims Court (the predecessor court to the Court of Federal Claims) and this court in *Sammt* was whether the imminent imposition of a less

to be heard because he was not allowed to present testimony and additional affidavits that further support his positions. We reject

Moyer's arguments on these issues as without merit.

desirable alternative (mandatory retirement) rendered Sammt's otherwise voluntary retirement involuntary. The Claims Court held that it had jurisdiction because the impending mandatory retirement rendered Sammt's unilateral retirement involuntary, but further held that the claims were without merit. *See id.* at 31. This court held, however, that, as a matter of law, the Claims Court did not have jurisdiction because Sammt voluntarily retired. We noted that the imposition of a less desirable alternative (mandatory retirement) does not render an otherwise voluntary retirement involuntary. *See id.* at 32. We also noted, without citation to legal authority, that if Sammt's retirement were voluntary, the Claims Court would not have jurisdiction, as discussed above. In *Sammt*, however, there was "no fact dispute on the question of whether Sammt chose to retire voluntarily," and therefore this court directed the Claims Court to dismiss the case for lack of jurisdiction because Sammt's voluntary retirement precluded applicability of a money-mandating statute. *Id.* at 33. Sammt never argued, as Moyer does here, that he was entitled to compensation under mandatory Army regulations, regardless of whether his retirement was voluntary or involuntary. Such arguments were also not made in cases such as *Adkins* and *Tippett* that restated the general principle of *Sammt* that voluntary retirement or resignation divests the Court of Federal Claims of jurisdiction.

■ Although not based on any regulatory provisions or precedent, *Sammt* and cases following it are based on the common sense notion that one who voluntarily gives up any right to compensation and benefits cannot later claim entitlement to such. But it also comports with common sense to consider whether jurisdiction exists over a claim that regulations require a governmental body to award benefits, regardless

of whether a resignation is voluntary or involuntary. The "money-mandating" provision is present, as required under the Tucker Act, and the claimant can hardly be said to have waived entitlement to the provision by voluntarily retiring or resigning if it applies irrespective of the manner in which the claimant leaves the service. Thus, if (1) such a provision exists that requires a government employer to perform certain duties or provide certain benefits for an employee irrespective of a voluntary separation, and (2) a claimant can show that it is legally applicable to her situation,[2] the Court of Federal Claims has jurisdiction to decide whether relief should be awarded, notwithstanding a voluntary retirement or resignation.

Here, although the Court of Federal Claims dismissed Moyer's complaint for lack of jurisdiction, it first determined that Moyer's involuntariness allegations and the regulatory count in his complaint were baseless. Only after concluding that Moyer resigned voluntarily and that Moyer's regulatory count had no legal foundation, did the Court of Federal Claims conclude that it did not have jurisdiction under the Tucker Act, for no money-mandating statute was applicable to Moyer. The Court of Federal Claims plainly had authority to consider Moyer's allegation of involuntary resignation and to rule on the regulatory issue which also went to its jurisdiction. As noted above, had the Court of Federal Claims decided that Moyer's regulatory claim rested upon a proper legal basis that was available to Moyer, it could have asserted jurisdiction over that claim even though it found that Moyer voluntarily resigned.

## II.

### A.

■ Moyer argues that his resignation was involuntary, and therefore the Court

2. There may be few cases where a claim based on such a provision has merit. If a claimant mounts an allegation of this type that clearly fails to meet either of these two requirements, the government should be able to easily dispose of it on a motion under Rule 12(b)(1) (lack of jurisdiction) or 12(b)(4) (failure to state a claim) of the Court of Federal Claims, or on a motion for summary judgment.

of Federal Claims should not have relied on it as a basis for dismissing his complaint. A resignation is "presumed to be voluntary." *Tippett*, 185 F.3d at 1255. However, if the resignation "results from misrepresentation or deception on the part of government officers," a presumptively voluntary resignation is deemed involuntary. *Id.* at 1255. Here, as below, Moyer argues that he was misled into believing that he would be processed for a medical discharge despite tendering his resignation. Moyer alleges that he was told as much by Captains Jaynes and Oten, and that medical documents show that he was undergoing MEB processing prior to his resignation. If so, such evidence would at least indirectly support his claim that he believed, at the time he resigned, that the MEB processing would continue and that he would be medically discharged.

■ We hold the Court of Federal Claims did not clearly err in finding as a fact that Moyer's retirement was voluntary. Aside from his affidavit, Moyer was unable to point to any other evidence that his processing for separation based on disability began before he submitted his resignation. The single unexplained reference to "med board" in his January 1991 medical records, which the Court of Federal Claims found unconvincing, was not enough to overcome all the other evidence of record indicating that Moyer's processing for a medical discharge did not begin until after he submitted his resignation. *See Moyer*, 41 Fed.Cl. at 329 ("All contemporaneous documents and other evidence show that Moyer did not pursue a disability separation until after he tendered his resignation, which renders implausible his assertion that he decided to resign based on advice that both his disability processing and resignation would be considered by the Secretary of the Army.").

As discussed in the fine opinion of the Court of Federal Claims, the two officers who allegedly misled Moyer completely contradicted Moyer's version of the events surrounding his resignation. *See id.* (referring to Captain Jaynes's statement before the ABCMR that Moyer only informed him on May 7, 1991, after submitting his resignation, that "he was being medically evaluated for possible separation for physical disability ... and his status was going to be considered" by an MEB). Moreover, the medical records as a whole support their version of events. Even the May 24, 1991 letter written by Moyer himself supports the finding of the Court of Federal Claims that Moyer's processing for medical discharge did not begin until after he resigned, because Moyer therein referred to his April 1991 (post-resignation) examination as initiating his MEB processing. *See id.* at 329–30. Thus, Moyer could not show that the MEB processing began before he resigned, which would have lent credence to his allegation that he believed at the time he resigned that he was entitled to MEB processing, and possibly, a medical discharge. In any event, it is clear that aside from the sequence of events— whether the resignation or the MEB occurred first—Moyer resigned in March to avoid trial, not because of any expectations about a disability discharge. Based on our review of the evidence supporting the finding of the Court of Federal Claims that at the time he resigned, Moyer was not assured of medical processing simultaneous with consideration of his resignation, we hold that the Court of Federal Claims did not clearly err in concluding that Moyer's resignation was voluntary.

**B.**

■ Moyer also argues that, regardless of a voluntary resignation or the absence of misrepresentations by the above officers, Army Regulation 635–40 itself *requires* that his medical discharge request be processed simultaneously with his discharge based on his resignation, so that if he later were found entitled to a medical discharge he would receive it and his discharge by resignation would be superseded

thereby. The Court of Federal Claims, however, concluded that in his situation Moyer could not possibly take advantage of Army Regulation 635–40, noting:

> Moyer alleges that Army Regulation 635–40 prohibits a serviceman from being administratively separated until the medical review process is complete. [Moyer] was not "administratively" separated, however, because he was charged with an offense under the Uniform Code of Military Justice. Indeed, Army Regulation 635–40 expressly provides: "a soldier charged with an offense under the UCMJ ... may not be referred for, or continue disability processing unless—[no exception is applicable]."

*Moyer*, 41 Fed.Cl. at 327 n. 1.[3] We agree with the Court of Federal Claims that Moyer was not "administratively separated" because his resignation was tendered in order to avoid trial on charges under the UCMJ by court-martial, and the relevant regulation expressly precludes continued disability processing for soldiers charged under the UCMJ. Thus, Moyer was ineligible for whatever advantages Army Regulation 635–40 might have afforded.

## CONCLUSION

Because the Court of Federal Claims did not clearly err in finding that Moyer had voluntarily resigned or err in concluding that his regulatory count was without legal basis because the cited regulation was inapplicable to him, it correctly dismissed Moyer's complaint for lack of jurisdiction. Accordingly, the decision of the Court of Federal Claims is

*AFFIRMED.*