Robert W. SINCLAIR, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 02–2042.

United States Court of Federal Claims.

June 15, 2005.

James A. Endicott, Jr., Harker Heights, TX, counsel of record for Plaintiff.

Elizabeth Thomas, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, counsel of record for defendant, with whom were David M. Cohen, Director, Bryant G. Snee, Assistant Director, and Peter D. Keisler, Assistant Attorney General; of counsel were Lieutenant Colonel Vanessa Crockford, and Major Louis A. Birdsong, United States Army Litigation Division.

## OPINION

DAMICH, Chief Judge.

Plaintiff filed his complaint on December 27, 2002, alleging, *inter alia,* that he is entitled to recover military pay under 10 U.S.C. § 1552, which allows for the correction of military records and governs claims incident thereto, because he was improperly discharged from the United States Army after he resigned in lieu of a court-martial. Compl. ¶¶ 1, 9. Soon after the case was filed, Plaintiff filed a consent motion to stay proceedings while two military appeals boards reviewed his case. The Court granted Plaintiff's motion in May 2003. Both boards ren-

dered decisions by the end of May 2004, which decisions Plaintiff did not find entirely satisfactory. On August 19, 2004, the United States (hereinafter "Defendant") filed a Motion to Dismiss (hereinafter "Def.'s Mot.") under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (hereinafter "RCFC"), alleging that this Court lacks jurisdiction over Plaintiff's complaint and that Plaintiff has failed to state a claim upon which relief can be granted. Def.'s Mot. at 1. During the briefing of Defendant's motion, Plaintiff requested leave to amend his complaint, which the Court, in its solicitude, granted. Plaintiff's Response to Defendant's Motion to Dismiss (hereinafter "Pl.'s Resp.") at 3. To incorporate the new information contained in the amended complaint, supplemental briefing on Defendant's motion was allowed. Briefing was completed in early February 2005.

Plaintiff asks the Court to (1) grant him back pay and allowances as a Lieutenant Colonel O–5 from December 30, 1996 (the day on which Plaintiff was discharged), until June 30, 1997; (2) place him on the retired rolls of the Army at the same grade or at the last grade at which he last honorably served as of July 1, 1997;[1] and (3) correct his military records to remove his discharge under other than honorable conditions ("UOTHC") and reflect his retirement as being under honorable conditions. *Id.* at 8–9. Although Plaintiff was given every opportunity to establish jurisdiction, including the chance to file an amended complaint, Plaintiff has failed to do so with regard to the first two of his claims, and the Court must, for the reasons discussed below, GRANT Defendant's motion for lack of subject matter jurisdiction. With regard to Plaintiff's final claim, the Court GRANTS Defendant's motion for failure to state a claim.

## I. Background

In 1996, Plaintiff, who had then served in the Army for over nineteen years, was reassigned from Fort Stewart, Georgia, to Fort Hood, Texas. Decl. of Robert W. Sinclair

¶¶ 3–4, *available at* Pl.'s Resp. Ex. 2 (hereinafter "Sinclair Decl."). At the time of his reassignment, Plaintiff was a Lieutenant Colonel commanding the Signal Battalion of the 24th Infantry Division. *Id.* ¶ 4. At Fort Hood, Plaintiff learned informally that he was under investigation for sexual harassment and inappropriate touching, as a result of complaints by female members of his former command. Am. Compl. ¶¶ 13, 16(a)-(b), 16(g). Once formal charges were brought, Plaintiff was ordered to return to Fort Stewart for potential court-martial proceedings. *Id.* ¶ 16(f). Plaintiff was also given a "no contact" order that prevented him from communicating with any member of his former command. *Id.* ¶ 16(g).

Plaintiff met with counsel from both the Fort Stewart and Fort Hood Trial Defense Services (hereinafter "TDS counsel" or "TDS attorneys"). *Id.* ¶ 16(h)-(k). According to the amended complaint, both TDS counsel advised Plaintiff that immediate resignation would be in his best interest because officers at Fort Stewart had been dismissed for "stealing a candy bar." *Id.* ¶¶ 15, 16(j). Subsequently, Plaintiff submitted a resignation for the good of the service in lieu of trial by a general court-martial. He was aware at the time of the possibility that his resignation could amount to a discharge UOTHC. *Id.* ¶¶ 4–5; Record of Proceedings, Department of the Army Board for the Correction of Military Records ¶ 3, *available at* Pl.'s Resp. Ex. 1 (hereinafter "ABCMR Record"). The Assistant Secretary of the Army, Manpower and Reserve Affairs, accepted Plaintiff's resignation and directed that he receive a discharge UOTHC. *Id.* ¶ 4. Plaintiff was discharged accordingly on December 30, 1996. *Id.*

Plaintiff filed appeals with the Army Discharge Review Board (hereinafter "ADRB") and the Army Board for the Correction of Military Records ("ABCMR") on December 28, 1999, and filed his complaint in this court three years later. Am. Compl. ¶ 10. As already stated, the Court stayed proceedings to give the boards time to decide. On May 9,

---

1. Although Plaintiff does not comment on the significance of each date, the Court presumes that June 30, 1997, would have been the end of Plaintiff's tour of duty, and July 1, 1997, would have been the first day of his retirement.

2003, the ADRB upgraded Plaintiff's discharge from discharge UOTHC to a general discharge under honorable conditions. Joint Status Report of 7/1/03, ¶ 1. However, on May 25, 2004, the ABCMR declined Plaintiff's request to change his status from discharged to retired. Am. Compl. ¶ 12; ABCMR Record: Discussion ¶ 4. After the two boards had made their decisions, the Court lifted the stay.

Plaintiff alleges that his resignation in lieu of a court-martial was invalid because he was under duress, was being coerced, and was experiencing tremendous emotional strain. Am. Compl. ¶ 16(*o*). He claims that the duress, coercion, and emotional strain were caused by (1) the negative attitude and mood of the command at Fort Stewart; (2) his removal from his family at Fort Hood; (3) the failure of his TDS attorneys to interview witnesses and completely investigate the charges; and (4) his isolation from anyone (other than his attorneys) who could advise him. *Id.* ¶¶ 16(k), 16(m), 16(*o*). As a result, Plaintiff appeals the ABCMR's decision to deny him a status change from discharged to retired, contending that such denial was arbitrary, capricious, not supported by substantial evidence, and contrary to applicable law and regulations. *Id.* ¶ 20.

## II.  Analysis

The Court must determine if it is appropriate to dismiss Plaintiff's suit based on RCFC 12(b)(1) or RCFC 12(b)(6).

### A.  Jurisdiction

■ Plaintiff's complaint alleges that the Court of Federal Claims has jurisdiction over this case under the Tucker Act, 28 U.S.C. § 1491, and 10 U.S.C. § 1552, which allows for the correction of military records and governs claims incident thereto. Am. Compl. ¶¶ 1, 2. Am. Compl. ¶ 2. The Tucker Act provides that the court:

shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . .

28 U.S.C. § 1491(a)(1). The Tucker Act itself, however, is not an "act of Congress" upon which a claim can be based. *See Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir.2005) (en banc). Rather, for this Court to have jurisdiction, a plaintiff must identify a separate, money-mandating statute. *Id.* The Supreme Court has explained that a statute is money-mandating if it "[is] reasonably amenable to the reading that it mandates a right of recovery in damages." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003).

Although Section 1552 has been interpreted as a money-mandating statute, it cannot be used to provide the relief that Plaintiff wants in this case. In an important Federal Circuit decision regarding whether section 1552 is money mandating, the court held that "section 1552 is not the 'money-mandating' statute that gives rise to the cause of action that provides the basis for a Tucker Act suit in the Court of Federal Claims," and that section 1552 is also not the basis for an action for back pay. *Martinez v. United States*, 333 F.3d 1295, 1314–15 (Fed.Cir.2003) (en banc). Nevertheless, the court recognized two exceptions, holding that section 1552 is money-mandating when a military correction board has (1) "conclude[d] that the service member's discharge was unlawful," or (2) "granted relief and the service member seeks to enforce or challenge the implementation or scope of the remedial order." *Id.* at 1314–15, 1315 n. 4. Since neither the ADRB nor the ABCMR found Plaintiff's discharge to be unlawful, and since the boards did not grant relief that Plaintiff seeks to enforce, neither of these exceptions apply.

Instead, "[i]n the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act, 37 U.S.C. § 204." *Id.* at 1303. In the case at bar, although Plaintiff does not cite the Military Pay Act (MPA) as a basis for jurisdiction, the Court will again show Plaintiff solicitude and examine that statute for possible applicability to his allegations. *See Dysart v. United States*, 369 F.3d 1303, 1315 (Fed.Cir.2004) ("[T]he Military Pay Act . . . provides for suit in the Court of

Federal Claims when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay."); *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir. 1997) ("It is well established that 37 U.S.C. § 204 ... serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge.").

■ However, the Military Pay Act is only money-mandating when a plaintiff is *involuntarily* separated from the Armed Forces. *Rigsbee v. United States,* 226 F.3d 1376, 1378–79 (Fed.Cir.2000). This is because a voluntary retirement at a particular pay grade "constitutes a waiver of all relief sought by plaintiff." *Rigsbee v. United States,* 46 Fed.Cl. 120 (2000). Thus, "[i]f a discharge from service is voluntary, then the Court of Federal Claims lacks jurisdiction to review the discharge or any back pay damage claims." *Carmichael v. United States,* 298 F.3d 1367, 1371 (Fed.Cir.2002); *see Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999); *Tippett v. United States,* 185 F.3d 1250, 1255 (Fed.Cir.1999); *Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir. 1995); *Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985) ("If [plaintiff's] retirement was voluntary, no jurisdiction resides in the Claims Court."). Although both section 1552 and the MPA are usually perceived as money-mandating, as the Federal Circuit stated in *Moyer,* "[A] voluntary resignation generally obviates otherwise applicable statutory entitlements to compensation, thus precluding jurisdiction under the Tucker Act." 190 F.3d at 1318; *see also Gallucci v. United States,* 41 Fed.Cl. 631, 638 (1998) ("It is well established that claims for military pay and allowances are adjudicated in this court so long as plaintiff can establish as a preliminary matter that his resignation was involuntary.") (citation omitted).[2]

Since courts have jurisdiction to determine whether they have jurisdiction over matters brought before them, *Widdoss v. DHHS,* 989 F.2d 1170, 1177 (Fed.Cir.1993), the Court is "empowered to adjudicate voluntariness or other issues bearing on jurisdiction, even if [the issue of voluntariness is] also pertinent to the merits." *Moyer,* 190 F.3d at 1318 (emphasis added). Whether the Court has jurisdiction turns on whether Plaintiff voluntarily resigned from the military. In making this determination, for the purpose of ruling on Defendant's motion to dismiss, the Court will accept all allegations in the complaint as true and will construe the facts in the light most favorable to Plaintiff. *See Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir.1993). As the Federal Circuit has stated, "A well pleaded allegation in [a] complaint is sufficient to overcome challenges to jurisdiction." *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997). However, Plaintiff bears the burden of showing, by a preponderance of the evidence, that the court has jurisdiction. *See Taylor v. United States,* 303 F.3d 1357, 1359 (Fed.Cir. 2002); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998).

**B. Voluntariness**

■ Defendant argues that its motion to dismiss should be granted because Plaintiff's resignation in lieu of court-martial was voluntary. Defendant's Supplemental Motion to Dismiss Amended Complaint (hereinafter "Def.'s Suppl. Mot.") at 1. Resignations are presumed to be voluntary. *Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975). Nevertheless, "[i]f the [P]laintiff alleges facts that would make out a prima facie case of involuntariness if proven, then this court will have jurisdiction and Plaintiff is entitled to a hearing on the voluntariness issue." *Tippett,* 185 F.3d at 1255 (citing

---

2. The Court notes, however, that certain decisions of the Federal Circuit have treated the issue of voluntary discharge as a 12(b)(6) motion, instead of one for lack of jurisdiction. *See, e.g., Palmer v. United States,* 168 F.3d 1310, 1312 (Fed.Cir.1999) (stating that there is a difference between the Court of Federal Claims' "general power to adjudicate in specific areas of substan-

tive law," and "its general power with regard to the facts peculiar to the specific claim"). This Court has also addressed the issue of voluntariness as a 12(b)(6) motion (previously classified as a 12(b)(4) motion). *See Kim v. United States,* 47 Fed.Cl. 493 (2000). However, *Palmer* and *Kim* were decided prior to much of the relevant precedent cited in this opinion.

*Dumas v. Merit Sys. Prot. Bd.*, 789 F.2d 892, 894 (Fed.Cir.1986)); *see also Covington v. DHHS*, 750 F.2d 937, 941–42 (Fed.Cir.1984) (finding that the plaintiff was entitled to a hearing after he made a prima facie case that his resignation was involuntary due to government misrepresentation).

■ Plaintiff can thus rebut the presumption that his resignation was voluntary if he can show that he resigned as a result of wrongful government action. *Roskos v. United States*, 213 Ct.Cl. 34, 40, 549 F.2d 1386 (1977) ("An action is not voluntary if it is produced by government conduct which is wrongful."). Decisions of the Federal Circuit and the Court of Claims, both of which are binding on this court,[3] have held that a resignation is involuntary if it is caused by any of the three causes that Plaintiff alleges: (1) government duress or coercion, *Christie*, 518 F.2d at 587; (2) mental incompetence (or, as Plaintiff alleges, emotional strain), *Manzi v. United States*, 198 Ct.Cl. 489, 492, 1972 WL 20799 (1972); or (3) government deception or misrepresentation (or, as Plaintiff claims, ineffective assistance or counsel), *Tippett*, 185 F.3d at 1255. Since Plaintiff has failed to make "non-frivolous allegations" that establish a prima facie case of involuntariness under any of these tests, he has not overcome the presumption that his resignation was voluntary. Plaintiff is therefore not entitled to a hearing on voluntariness. *See Tippett*, 185 F.3d at 1255–56. In other words, for the reasons stated below, the Court cannot hear Plaintiff's claim.

### 1. Duress/Coercion

The first way Plaintiff could rebut the presumption of voluntariness is by showing that he resigned under duress. In his complaint, Plaintiff explicitly avers that when he signed the request to resign in lieu of court-martial, he "was under duress and coerced to do so by the circumstances in which [Defendant] placed [him]." Am. Compl. ¶ 16(*o*). Defendant argues—and the Court agrees—that Plaintiff has not established the ele-

ments of duress and that the presumption of voluntariness has not been rebutted. Def.'s Supp. Mot. at 3.

■ A resignation is considered the product of duress if Plaintiff can make a prima facie case: "(1) that one side involuntarily accepted the terms of another; (2) that the circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Christie*, 518 F.2d at 587 (quoting *Fruhauf Southwest Garment Co. v. United States*, 126 Ct.Cl. 51, 111 F.Supp. 945, 951 (1953)). Plaintiff must establish all three elements under an objective test to prevail on his claim of duress. *Carmichael*, 298 F.3d at 1372; *Kim*, 47 Fed.Cl. at 497.

#### a. Involuntary Acceptance of Defendant's Terms

■ Plaintiff presents insufficient allegations to show that he involuntarily accepted Defendant's terms. Plaintiff alleges that his two military defense attorneys advised him to resign. He followed their advice, subsequently submitting his "Resignation for the Good of the Service in Lieu of General Court–Martial, *available at* Def.'s Mot. Ex. A." (hereinafter "Sinclair Resignation"), pursuant to Army Regulation 600–8–24, chapter 3, paragraph 3–13. Am. Compl. ¶ 15; Sinclair Resignation ¶ 1. Plaintiff claims that this "bad" advice from his attorneys is the reason he voluntarily resigned. While this may be true, following the advice of an attorney does not amount to involuntary acceptance. *See Tiburzi v. Dep't of Justice*, 269 F.3d 1346, 1355 (Fed.Cir.2001) (no coercion found where counsel made statements to the plaintiff that appraised the merits of his appeal).

Furthermore, when a plaintiff's decision is made knowingly and intelligently, it is presumed to have been made voluntarily. *See Kim*, 47 Fed.Cl. at 497. In *Kim*, the plaintiff requested to resign from the Army via a letter. *Id.* This Court found that her letter represented a knowing and intelligent, and

---

3. The United States Court of Claims is the predecessor to both the Court of Federal Claims and the United States Court of Appeals for the Federal Circuit. *See Doe v. United States*, 372 F.3d 1347, 1350 (Fed.Cir.2004). Therefore, the decisions of the Court of Claims are binding on both courts.

thus voluntary, decision. *Id.* In this case, Plaintiff's resignation contains several statements indicating that he made a knowing and intelligent decision. For example, in Plaintiff's resignation, he admits that he was not subject to coercion and that he was informed of his options regarding counsel. Sinclair Resignation, ¶ 1–2. He states that he understood that he might be discharged under other than honorable conditions and that there could be other potentially negative repercussions resulting from his resignation. *Id.* ¶¶ 4–5. Finally, in Plaintiff's statement supporting his resignation, Plaintiff avers that he "failed," and had "forfeited the privilege of continuing to serve [his] country." Statement in Support of Resignation for the Good of the Service ¶¶ 1–2, *available at* Def.'s Supp. Mot.App. at 2 (hereinafter "Sinclair's Statement in Support").

Plaintiff does not claim that he submitted his resignation against his wishes, and nowhere in the record does he allege that his statement in support or his letter of resignation was insincere. At most, Plaintiff claims that, when he signed the request to resign, he "felt under total duress and that [he] was … coerced to do [so]," saying that he punished himself "more severely than any court-martial would have." Declaration of Robert W. Sinclair, ¶¶ 18–19, at 3, *available at* Pl.'s Resp. Ex. 2 (hereinafter "Sinclair's Declaration"). These contentions, however, are not supported by the record. Plaintiff actually reinforces his earlier admissions when he states in his declaration that he deserved to be punished and that some of his actions were clearly wrong. *Id.* ¶¶ 21–22. These representations by Plaintiff indicate that he believed at the time that it was in his best interest to resign. Now, he simply regrets his decision. This Court does not believe such regret amounts to involuntary acceptance of Defendant's terms. *See Colon v. United States,* 32 Fed.Cl. 481, 491 (1994) ("Hindsight does not serve to convert a voluntary resignation into an involuntary resignation."). On the contrary, the facts show nothing more than that Plaintiff chose to resign because he thought, at the time, that it was in his best interest. *See* Am. Compl. ¶ 15.

Even though Plaintiff has failed to establish that he involuntarily accepted Defendant's terms, Plaintiff can still prevail on this element of duress if he can show that the government's action against him was wrongful, that the government failed to follow its procedures, or that the government took adverse action against him when it lacked reasonable grounds. *See Dick v. Dep't of Veterans Affairs,* 290 F.3d 1356, 1362–64 (Fed.Cir. 2002) (Employee allegation of involuntary demotion in retaliation for whistleblowing entitled him to a hearing on voluntariness); *Terban v. Dep't of Energy,* 216 F.3d 1021, 1026 (Fed.Cir.2000). Plaintiff makes no showing that any of these situations is present in this case. For instance, Plaintiff does not dispute that he was facing court martial based on legally cognizable allegations, nor does he allege that Defendant lacked reasonable grounds for the court martial. Plaintiff does argue that subsequent investigations concluded that many of the sexual harassment allegations against him lacked substance. Am. Compl. ¶ 16(*l*). However, even when the Court construes this fact favorably to Plaintiff (which the Court is required to do), it does not indicate that Defendant lacked reasonable grounds for pursuing the court martial, especially considering the quantity and content of the charges raised against Plaintiff. *See* Charge Sheet, *available at* Def.'s Supp. Mot.App. at 2–8. Therefore, Plaintiff has failed to establish the first element of duress.

**b. Alternatives to Resignation**

The second key issue is whether Plaintiff had alternatives to resignation. *Kim,* 47 Fed.Cl. at 497. Although Plaintiff alleges that the advice of his attorneys gave him "no alternative but to resign," Am. Compl. ¶ 16(k), such a statement merely represents Plaintiff's subjective belief, which is not an appropriate test for voluntariness. *Christie,* 518 F.2d at 587. As the Court stated in *Kim,* "duress is not measured by Plaintiff's subjective evaluation of [his] circumstances, but rather the Court must engage in an objective evaluation of all the facts." 47 Fed.Cl. at 497.

Since Plaintiff resigned in lieu of a court-martial, he claims that he had no viable alternative, and therefore that his resignation was given under duress. *See* Am. Compl. ¶ 16(*o*). This argument must fail, however, since courts have repeatedly held that resignations submitted to avoid threatened termination for good cause are voluntary. *Terban,* 216 F.3d at 1026 ("Our case law is settled that where an employee is faced with the unpleasant alternative of resigning or being subjected to an adverse action, the resulting resignation cannot be considered an involuntary retirement unless the employee shows that the agency lacked reasonable grounds for threatening to take the adverse action."); *Christie,* 518 F.2d at 587 (finding that plaintiff had an alternative where she could have chosen to "stand pat and fight" the Navy's decision to separate her for cause).

Under an objective evaluation of the facts and circumstances, Plaintiff was given alternatives to resignation, including contesting Defendant's charges or requesting additional investigation. Although Plaintiff was faced with unpleasant alternatives to resigning, similar alternatives were present in *Christie* and in *Kim,* but it was nevertheless determined in each case that the plaintiff was given a choice. As the Federal Circuit stated in *Christie,* 518 F.2d at 587: "Merely because plaintiff [is] faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation." Consequently, because Plaintiff has not established that he had no alternative to resigning, he has not met the second element of duress.

### c. Causation

Since the Court has found that there were no adverse circumstances, *e.g.,* Plaintiff's resignation was not involuntary due to duress or a lack of alternatives, there is no reason to address this element. Since Plaintiff has not presented a prima facie case of duress, the Court finds that Plaintiff's resignation was not involuntary based upon the ground of duress and coercion.

### 2. Mental Incompetence

■ Alternately, Plaintiff could show that his resignation was involuntary due to his mental incompetence at the time of his resignation. Defendant, however, argues that Plaintiff has not met the proper standard for mental incompetence, alleging that, even though Plaintiff might currently regret his decision to resign, he maintained his freedom of choice when he resigned. Def.'s Supp. Mot. at 7–8. For the Court to find that Plaintiff resigned involuntarily due to mental incompetence, Plaintiff must make a prima facie showing that he was incapable of understanding his actions at the time of his resignation. *See Manzi,* 198 Ct.Cl. at 505 (deeming plaintiff's resignation involuntary because he was temporarily suffering from a chronic mental illness that left him incapable of understanding the transaction); *Scarseth v. United States,* 52 Fed.Cl. 458, 476 (2002) (Court deemed plaintiff's resignation in lieu of court-martial voluntary, even though plaintiff was briefly hospitalized for anxiety, depression, and alleged post-traumatic stress disorder shortly after submitting the resignation.). But Plaintiff simply alleges that he was under tremendous emotional strain and was seeking counsel from military chaplains. Am. Compl. ¶¶ 16(e), 16(*o*). Nowhere does he allege that he was incapable of understanding his actions at the time he resigned. The Court is not convinced that Plaintiff's allegations of emotional strain and need for counseling alone amount to a prima facie case for mental incompetence. *See Gallucci,* 41 Fed.Cl. at 643 (holding that plaintiff's assertion that he was "under severe mental stress and anxiety and was undergoing mental counseling" was insufficient to show that his resignation was involuntary). Therefore, the Court finds that Plaintiff has no right to a hearing on voluntariness based on a non-frivolous showing of mental incompetence at the time of his resignation.

### 3. Misrepresentation/Ineffective Assistance of Counsel

■ Finally, Plaintiff may rebut the presumption of voluntariness by showing that his resignation was caused by "misrepresentation or deception on the part of govern-

ment officers." *Tippett*, 185 F.3d at 1255. A misrepresentation "can be caused by providing misleading information or by failing to provide relevant information." *Id.* In the first instance, providing misleading information, a resignation will be deemed involuntary if (1) a reasonable person would have been misled by the statements, and (2) plaintiff did rely on those statements. *Bergman v. United States*, 28 Fed.Cl. 580, 588 (1993); *see also Tippett*, 185 F.3d at 1255 (A resignation is involuntary only "if a reasonable person would have been misled by the information."); *Christie*, 518 F.2d at 588 ("[R]eliance on the misrepresentation is an essential element."). However, the test for failing to provide relevant information is more discriminating: Failing to provide information will only rebut the presumption of voluntariness in cases "where the agency had given misinformation and had an affirmative obligation to correct the misinformation by supplying the correct information." *Gaudette v. Dep't of Transp.*, 832 F.2d 1256, 1258 (Fed.Cir. 1987).

Plaintiff has not alleged or exhibited any misrepresentations on which he detrimentally relied. *See Gallucci*, 41 Fed.Cl. at 640 (holding that a plaintiff must point to "specific misinformation, inconsistent remarks, deception or improper advice" before involuntariness based on misrepresentation will be found). Furthermore, Plaintiff has not identified anything about which his counsel failed to inform him. In addition, Plaintiff stated in his resignation memorandum that he "fully under[stood] the implications of [his resignation]" and had been "fully advised and counseled" regarding his options. Sinclair's Statement in Support ¶¶ 1–2; *see Kim*, 47 Fed.Cl. at 500 (finding that plaintiff's retirement resulted from a free choice because she had written a letter that did not contain any language indicating that her retirement was under protest).

█ Since Plaintiff has not shown that he experienced *active misrepresentation* or lack of information at the hands of the government, his remaining basis for his misrepresentation claim is that his counsel was ineffective. In criminal cases, in order to prove ineffective assistance of counsel, a plaintiff must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) the deficiency prejudiced the party receiving counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This same test has been applied when courts evaluate the effectiveness of military defense counsel. *See, e.g., Metz v. United States*, 61 Fed.Cl. 154, 166–67 (2004) (citations omitted). This test is stringent because the judgment of counsel is entitled to a heavy measure of deference. *Florida v. Nixon*, —— U.S. ——, ——, 125 S.Ct. 551, 562, 160 L.Ed.2d 565 (2004) (noting "how infrequently" a presumption of ineffectiveness arises in capital cases); *United States v. Cronic*, 466 U.S. 648, 657, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (stating that where "counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance"); *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052; *Tiburzi*, 269 F.3d at 1355 (" 'Those who employ the judicial appellate process to attack a settlement ... bear a properly heavy burden' of proof that the agreement was improperly obtained") (citing *Asberry v. United States Postal Serv.*, 692 F.2d 1378, 1380 (Fed.Cir.1982)).

Plaintiff alleges that neither of his military defense attorneys interviewed any witnesses or accusers or advised him to have the matter proceed to an Article 32 Investigation. Am. Compl. ¶ 16(k). He contends that, in offering advice, his TDS counsel should have relied on more than a criminal investigation report prepared with a view toward prosecution because "nothing is more basic than witness interviews to determine inconsistencies of facts, bias, and credibility of the witness." Pl.'s Supp. Resp. at 2. Plaintiff argues that these omissions were serious errors and constituted ineffective assistance of counsel. *Id.* at 1.

Defendant, on the other hand, claims that Plaintiff has not demonstrated that such conduct falls outside of the wide range of reasonable professional assistance. Def.'s Supp. Reply at 2. Defendant identifies the numerous charges against Plaintiff, the statements given by members of his former unit, and

Plaintiff's "recognition of culpability," in addition to the investigation report, as providing reasonable grounds for the attorneys' recommendation. *Id.* at 2–3; *see Nickerson v. United States*, 35 Fed.Cl. 581, 588 (1996) (finding that a serviceperson's discharge for medical reasons was not involuntary due to plaintiff's claim that he was erroneously diagnosed when "substantial evidence exists to support the diagnosis."). As Defendant notes, because the TDS attorneys were from different units, Plaintiff also had the benefit of perspectives from both inside and outside of the charging unit. Def.'s Supp. Reply at 2–3.

The Court holds that Plaintiff has not made a prima facie case for misrepresentation or ineffective assistance of counsel. Although ineffective assistance of counsel is sometimes found in military cases, it is a rare happening that occurs only when there is especially egregious conduct on the part of counsel. *Compare Metz*, 61 Fed.Cl. at 166–68 (finding ineffective assistance of counsel where counsel failed, among other things, to inform plaintiff of tests that could be run on his urine sample to establish that the marijuana traces in the sample did not originate with him), *with Moody v. United States*, 58 Fed.Cl. 522, 526 (2003) (finding no ineffective assistance of counsel even though counsel failed to seek dismissal of charges against plaintiff), *and Scarseth*, 52 Fed.Cl. at 469–70 (holding that there was no ineffective assistance of counsel where the attorney and plaintiff regularly corresponded and met, although plaintiff alleged that counsel had not examined evidence and that counsel had told plaintiff that he had no chance of avoiding conviction).

Additionally, in Plaintiff's resignation letter, he admits that he understood that he might be discharged under other than honorable conditions and that there could be other negative results due to his resignation. Sinclair Resignation ¶¶ 4–5. A similar situation occurred in *Colon v. United States*, in which the court held that, "[b]y his signature on his resignation letter, plaintiff certified that he understood the elements of the offenses charged and that he understood that he possibly could be discharged Under Other Than Honorable Conditions. This fact clearly supports the voluntariness of plaintiff's discharge." 32 Fed.Cl. at 489; *see also Nickerson*, 35 Fed.Cl. at 589 ("[P]laintiff contends that he . . . was not advised regarding the implications of agreeing to that discharge. Plaintiff, however, signed a form that specifically states he was counseled regarding the Panel's finding.").

Because Plaintiff has not met the high burden of making a prima facie case for ineffective assistance of counsel, Plaintiff has failed to rebut the presumption that his resignation was voluntary on this ground. As a result of Plaintiff's inability to establish involuntariness on any ground, the Court finds that Plaintiff's claims for back pay must be dismissed for lack of subject matter jurisdiction.

### C. Failure to State a Claim

██ Defendant also alleges that Plaintiff's claim should be dismissed because he has failed to state a claim upon which relief can be granted under RCFC 12(b)(6) of the Court's Rules. The Court declines to address this issue, except with regard to Plaintiff's claim that he is entitled to correction of his military records to remove his discharge UOTHC and reflect that his retirement is under honorable conditions. Am. Compl. at 8–9. The Court finds that Plaintiff has failed to state a claim for correction of his records, though, because he had the opportunity to raise this issue during his appeal to the ABCMR, at which time he initially claimed that his resignation was involuntary. ABCMR Record of Proceedings at 2, *available at* Pl.'s Resp. Ex. 1; *see Lizut v. Dep't of the Army*, 717 F.2d 1391, 1396 (Fed.Cir.1983) (holding that allowing a party to present issues it could have raised at the military board level would undermine the military board's authority); *Gallucci*, 41 Fed.Cl. at 644–45; *Benton v. United States*, 6 Cl.Ct. 781, 791 (1984).

### III. Conclusion

Because Plaintiff voluntarily resigned from the Army, this Court has no jurisdiction over his claim. In addition, with regard to his request for correction of military records,

Plaintiff has failed to state a claim on which relief can be granted. Therefore, Defendant's Motion to Dismiss is hereby GRANTED. The Clerk of the Court is directed to dismiss Plaintiff's claim for correction of records with prejudice and the rest of his case without prejudice.