David Alan CARMICHAEL,
Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 01–5034.

United States Court of Appeals,
Federal Circuit.

Aug. 12, 2002.

Herbert William Titus, Troy A. Titus, P.C, of Virginia Beach, VA, argued for plaintiff-appellant.

Lauren S. Moore, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Robert E. Kirschman, Jr., Assistant Director. Of counsel on the brief was Major Eugene H. Robinson, Jr., Litigation Attorney, United States Marine Corps, Office of the Judge Advocate General. Of counsel was Hagen W. Frank, Department of the Navy, of Washington, DC.

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and DYK, Circuit Judge.

ARCHER, Senior Circuit Judge.

David Alan Carmichael ("Carmichael") appeals the order of the United States Court of Federal Claims dismissing for lack of jurisdiction his claims for back military pay and reinstatement stemming from his discharge from the United States Navy. *Carmichael v. United States,* No. 99–958C (Ct.Fed.Cl. Oct. 31, 2000). Because the trial court erred in holding that the Navy's religious accommodation procedures were irrelevant to the voluntariness of Carmichael's separation, we vacate and remand.

### Factual Background

Carmichael enlisted in the Navy in a delayed entry program on June 27, 1980. He served for sixteen years, reaching the rating of Chief Petty Officer, and was awarded a number of medals and commendations.

Upon Carmichael's entry into service, the Navy assigned him a Military Personnel Identification Number (MPIN), which corresponded to his Social Security number. By October 1, 1996, while he was assigned to Destroyer Squadron Thirty–Two, Carmichael determined that being associated with a Social Security number was against his religious beliefs. He believed it to be the "Number of the Beast" discussed in Chapter 13 of Revelations in the New Testament of the Bible. He submitted a request to the Commissioner of Social Security stating his religious convictions and requesting that she rescind the Social Security number that was assigned to him.

In November 1996, Carmichael advised Lieutenant Commander Jack Roesner, the Chief Staff Officer ("CSO") of Destroyer Squadron Thirty–Two, of his religious conviction that he could no longer be associated with a Social Security number as his MPIN. On or about November 6, 1996, in accordance with chain of command procedures, Carmichael submitted to CSO Roesner a letter addressed to Carmichael's commanding officer, Captain Joseph Benkert, Commander of Destroyer Squadron Thirty–Two, which included various enclosures. In the letter, Carmichael asked Captain Benkert to submit to the Chief of Naval Personnel ("CNP"), Admiral Daniel T. Oliver, an enclosed letter of request to change Carmichael's MPIN. Carmichael's request letter stated his religious conviction, enclosed a copy of his letter to the Social Security Administration which further explained his religious beliefs, and asked that his MPIN be changed to "000–00–0000." CSO Roesner refused on several occasions to forward the letter to either the commanding officer or to the CNP. On December 2, 1996, Carmichael finally sent his request directly to the CNP.

The Deputy CNP, on behalf of the CNP, denied Carmichael's request in a letter dated February 11, 1997. The Deputy CNP did not refer to Carmichael's letter as a request for religious accommodation, nor did he address the Navy's religious accommodation policies. Instead, the Deputy CNP denied Carmichael's request by reference to Executive Order 9397 (Nov. 22, 1943) (requiring the use of Social Security numbers where a government agency establishes a new system of permanent account numbers), Secretary of the Navy Notice 1070 (Dec. 1, 1971) (generally establishing the Social Security number as the sole MPIN for naval non-retired personnel), and Naval Military Personnel Manual article 4610100 (requiring that the MPIN assigned to naval personnel upon first entering the Navy be the "Social Security Number (SSN) shown on the member's OA–702, Social Security Account Number Card"). The Deputy CNP stated that it would be inappropriate to alter Carmichael's military records until the Social Security Administration formally acknowledged "000–00–0000" as his Social

Security number. The Deputy CNP further noted that when and if the Social Security Administration responded to Carmichael's request, Carmichael could resubmit his MPIN request for more favorable consideration.

In the interim, Carmichael was transferred to the Afloat Training Group, Surface Ship Acoustic Analysis Center ("SSAAC"). On March 6, 1997, the Officer–In–Charge at the SSAAC authorized Carmichael's request for enlistment extension. Carmichael was presented with a reenlistment contract on March 12, 1997, identifying him with his Social Security number, and he was advised to sign the contract "as is." Carmichael stated that he could not sign the contract in accordance with his religious convictions as long as it contained his Social Security number. Instead, he swore a verbal oath committing to fulfill his "obligated service requirement." Carmichael again was presented with the same contract on March 17, 1997, and again he refused to sign it. That day, he was honorably discharged from the Navy because the terms of his enlistment had expired. His service records indicate that his separation was voluntary, and he was not recommended for re-enlistment.

On May 6, 1998, Carmichael submitted an application to the Board of Correction of Naval Records ("BCNR") claiming that he had been wrongfully discharged for failure to grant his request for religious accommodation, and that his separation incorrectly was listed as voluntary. The board chairman requested the Navy Judge Advocate General ("JAG") to review the case to determine if Carmichael's request to change his MPIN should have been accommodated. The Navy JAG responded that no accommodation was necessary. Therefore, the BCNR denied Carmichael's request.

Carmichael filed a complaint with the Court of Federal Claims, asserting, among other things, that he was wrongfully discharged, and that the Navy erroneously listed his discharge as "voluntary." The Court of Federal Claims granted the government's motion to dismiss Carmichael's complaint for lack of jurisdiction because it found that he did not rebut the presumption that his discharge was voluntary. It found that Carmichael did not demonstrate any coercive or wrongful action by the Navy concerning his request to change his MPIN because the correct person (the Deputy CNP under the authority of the CNP) ultimately made the decision as to Carmichael's request under the proper law (Executive Order 9397, Secretary of the Navy Notice 1070 and Naval Military Personnel Manual article 4610100). On this basis, the court stated that whether or not Carmichael's letter was a religious accommodation request did not affect the disposition of the case. The trial court also found that Carmichael had alternative courses of action to being discharged, as he could have waited to resubmit his request to the Navy when and if the Social Security Administration acted on his request to that agency. Finally, the court stated that Carmichael did not address the question of whether he involuntarily accepted the government's terms of discharge.

### Discussion

A trial court's ruling on its own jurisdiction is a question of law which we review *de novo*. *See Moyer v. United States*, 190 F.3d 1314, 1317–18 (Fed.Cir. 1999). If a discharge from service is voluntary, then the Court of Federal Claims lacks jurisdiction to review the discharge or any back pay damages claims. *See id.; Tippett v. United States*, 185 F.3d 1250, 1255 (Fed.Cir.1999); *Sammt v. United States*, 780 F.2d 31, 33 (Fed.Cir.1985).

A presumption of voluntariness generally exists where an employee tenders his resignation or retires; the plaintiff bears the burden of coming forward with evidence to demonstrate that his resignation or retirement was not voluntary. *Tippett*, 185 F.3d at 1255; *Christie v. United States*, 207 Ct.Cl. 333, 518 F.2d 584, 587 (Ct.Cl.1975). This presumption of voluntariness logically should extend to a military service member's honorable discharge upon the expiration of the terms of his enlistment where the member refuses to execute an authorized re-enlistment contract. *Cf. Tippett*, 185 F.3d at 1255 (applying presumption of voluntariness to a service member's request for discharge). The trial court therefore correctly presumed that Carmichael's discharge from service was voluntary.

Nevertheless, an otherwise voluntary discharge is rendered involuntary if, among other things, it is obtained under duress or coercion. *Id.; see also Scharf v. Dep't of Air Force*, 710 F.2d 1572, 1574 (Fed.Cir.1983). In order to show that his discharge was the result of duress or coercion, Carmichael must demonstrate that: (1) he involuntarily accepted the terms of the government; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of the government's coercive acts. *See Christie*, 518 F.2d at 587. In applying this test, duress or coercion is measured by an objective evaluation of all the facts and circumstances. *Id.* The government's failure to follow its own rules may constitute coercive action sufficient to result in an employee's involuntary discharge. *See Roskos v. United States*, 213 Ct.Cl. 34, 549 F.2d 1386, 1389–90 (Cl.Ct.1977) ("An action is not voluntary if it is produced by government conduct which is wrongful." (citations omitted)).

Carmichael argues that the Court of Federal Claims erred by assuming that any failure by the Navy to follow its religious accommodation procedures concerning Carmichael's request to change his MPIN was irrelevant or harmless, and did not wrongfully produce his separation. Rather, Carmichael argues that his discharge was involuntary because (1) he involuntarily accepted the government's terms that if he did not sign the re-enlistment contract listing his Social Security number he would be discharged, (2) he had no other alternatives to refusing to sign that did not violate his religious faith, and (3) his discharge was the result of the government's coercive act of wrongfully failing to follow its own procedures on religious accommodation. We address these arguments in reverse order.

### I.

Secretary of the Navy Instruction 1730.8(4), in effect at the time that Carmichael left active duty, states, "Department of Navy policy is to accommodate the doctrinal or traditional observances of the religious faith practiced by the individual members when they will not have an adverse impact on military readiness, individual or unit readiness, unit cohesion, health, safety or discipline." SECNAVINST 1730.8(4) (May 23, 1988); *see also* Department of Defense Directive 1300.17 (Feb. 3, 1988) (setting forth religious accommodation policy for all military departments). The Navy's procedure for processing most accommodation requests is as follows:

> Commanders and commanding officers may approve requests for religious accommodation within the guidelines of this instruction. To promote standard procedures for resolving difficult questions concerning accommodation of religious practices, commanding officers shall consider the following factors. These factors recognize that each command may be affected by different con-

ditions and require individual consideration of each request. These factors are:

(1) The importance of military requirements, including individual readiness, unit readiness, unit cohesion, health, safety, morale and discipline.

(2) The religious importance of the accommodation to the requester.

(3) The cumulative impact of repeated accommodations of similar nature.

(4) Alternative means available to meet the requested accommodation.

Previous treatment of the same or similar requests, including treatment of similar requests made for other than religious reasons.

SECNAVINST 1730.8(9)(a); *see also* Department of Defense Directive 1300.17, ¶ 4.1–4.2 (setting forth similar procedural requirements, and stating that with certain exceptions not applicable here, each of the military departments shall determine the "appropriate level of command" for resolution of religious accommodation issues).

According to these directives, the Navy determined that the generally appropriate level of command for approval for requests for religious accommodation is the commander or commanding officer. *See* SECNAVINST 17030.8(4)(a), 1730.8(9)(a). However, the Navy also made clear that its religious accommodation instructions also applied "in the exercise of chain of command discretion concerning the accommodation of religious practice." *See* SECNAVINST 17030.8(4)(b). Where requests for accommodation cannot be granted, the Navy authorized taking administrative action against a member, including but not limited to reassignment, reclassification or separation. SECNAVINST 1730.8(9)(b).

Carmichael argues that no authorized Navy officer ever applied the Navy's religious accommodation test to him, because his CSO improperly refused to forward his religious accommodation request to his commander or commanding officer. Further, he argues that the Deputy CNP also did not consider whether religious accommodation was appropriate. Carmichael urges that these failures were wrongful and coercive, and caused his separation from the Navy. He states that had the proper procedures been followed, his commanding officer might have responded favorably to his request for accommodation, and successfully recommended to the CNP that Carmichael's religious convictions be accommodated through a change in his MPIN. Alternatively, his commanding officer might have involuntarily reassigned, reclassified, or separated Carmichael in accordance with SECNAVINST 1730.8(9)(b), and jurisdiction over such an action would have been clear.

We agree with Carmichael that the Court of Federal Claims erred in analyzing the voluntariness of Carmichael's discharge because it did not determine whether the Navy wrongfully failed to apply its own religious accommodation procedures to Carmichael, and improperly assumed that any failure would have been harmless. *See Roskos,* 549 F.2d at 1389–90 (holding that plaintiff-employee's retirement following a wrongful reassignment was involuntary); *cf. Conn v. United States,* 180 Ct.Cl. 120, 376 F.2d 878 (1967) (invalidating a less-than-honorable discharge after determining that the Navy had failed to follow its own regulations governing investigation and "nonjudicial punishment"). If the Navy failed to follow its own policies and did not properly provide Carmichael with religious accommodation procedures, Carmichael's discharge may be involuntary because he was faced with the untenable option of violating his religious conviction, or else resigning or being discharged. *See id.; cf. Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1156, 1 L.Ed.2d 1403 (1957) ("[R]egulations validly prescribed by a government

administrator are binding upon him as well as the citizen, and that this principle holds even when the administrative action under review is discretionary in nature.")

 Specifically, the trial court erred in holding that applicable law required the denial of Carmichael's request to change his MPIN. We recognize that Secretary of the Navy Notice 1070 (Dec. 1, 1971) established that "[e]ffective January 1, 1972, the [Social Security Number] will become the sole military personnel identification number for all naval personnel ... [with exceptions for personnel who retired or transferred before that date]," and Naval Military Personnel Manual article 4610100 requires that the MPIN to be assigned to all naval personnel upon entering into the service be the "Social Security Number (SSN) shown on the member's OA–702, Social Security Account Number Card." Nevertheless, these directives do not automatically exempt the MPIN from the Navy's religious accommodation policy.

The whole point of the religious accommodation policy is for the Navy to make exceptions to its otherwise generally-applicable rules in order to accommodate an individual service member's religious convictions where military necessity permits. Were it otherwise, the Navy's religious accommodation policy would be eviscerated. For example, military regulations prescribe uniform, food service and immunization standards that are generally mandatory for all service members. See SEC-NAVINST 1730.8(11)(b). Despite these generally-binding rules, Secretary of the Navy Instruction 1730.8 provides explicit procedural guidance allowing commanders in their discretion to make exceptions to these rules for religious accommodation purposes if military necessity so permits. See, e.g., SECNAVINST 1730.8(6), (7), (8). The MPIN directives should not be treated any differently.

 We further do not agree that Executive Order 9397 (Nov. 22, 1943) requires the denial of Carmichael's requested accommodation. Executive Order 9397 provides that "in the interest of economy" and to "avoid the unnecessary establishment of additional [numerical identification] systems ... any Federal department, establishment or agency shall, whenever the head thereof finds it advisable to establish a new system of permanent account numbers pertaining to individual person, utilize exclusively the [Social Security numbers]." In 1971, the Secretary of the Navy issued its Notice 1070 requiring the use of Social Security numbers as the sole MPIN for most non-retired personnel. However, rather than establishing a new system of permanent account numbers that would be governed by Executive Order 9397, the Navy stated that it was substituting Social Security numbers for the four types of numeric identifiers within its existing military personnel identification number system. See SECNAVNOTE 1070 (stating that its purpose was to "announce the discontinuance of officer file numbers, enlisted service numbers, and NROTC and other student numbers as military personnel identification numbers and the substitution therefore of the Social Security Number (SSN).") The Navy's action in substituting Social Security numbers for other MPIN's therefore was not mandated by Executive Order 9397. Moreover, Executive Order 9397 does not bar a federal agency from making individual exceptions to its identification number regulations, and SECNAVNOTE 1070 itself makes "grandfather" exceptions for certain retired and transferred naval personnel.

 Also irrelevant to this appeal are the Navy's general obligations as an employer to identify employees by Social Security number in reports to the Internal

Revenue Service. *See* 26 U.S.C. § 6109. Carmichael only appeals the voluntariness of his discharge based on the Navy's denial of his request to change his MPIN, not its treatment of his Social Security number in its reports to the IRS.

■ Finally, we cannot agree with the trial court on the record before us that any failure by the Navy to follow its religious accommodation procedures was irrelevant because the office of the CNP, who is ultimately in charge of changing MPIN's, decided Carmichael's request. While "[a] military personnel identification number may be changed only upon approval by the Chief of Naval Personnel," (Naval Military Personnel Manual article 4610100), religious accommodation requests generally are to be decided by "commanders or commanding officers" in their discretion based on the factors set forth by the Navy (except for certain requests for which an alternate level of review is specified). SECNAVINST 1730.8(9)(a); *see also* Department of Defense Directive 1300.17, ¶ 4.1–4.2 (emphasizing that each service should choose the appropriate level of command to review accommodation requests). Reading these directives together, the approval of a service-member's commander or commanding officer is at minimum a prerequisite for granting a general religious accommodation request. The Navy also appears to have intended the CNP to retain final decision-making authority to approve any changes in a service member's MPIN. However, given the weight the Navy's policy accords to a commander or commanding officer's discretion in granting these requests, it is possible that a positive recommendation by a commanding officer to accommodate a service-member's religiously-motivated request to change his MPIN would be given some deference by the CNP.

Even if the CNP were the sole appropriate decision-maker for requests to change MPINs (without any input from a service-member's commanding officer), the CNP would still be obliged to consider religious accommodation of such requests. The Navy's policy, and indeed the policy of all of the military services, is to accommodate the doctrinal or traditional observances of the religious faith practiced by the individual members when they will not have an adverse impact...." SECNAVINST 1730.8(4) (May 23, 1988); *see also* Department of Defense Directive 1300.17, ¶ 4.1–4.2. While the CNP would be entitled to determine that "military readiness ... unit cohesion, health, safety or discipline" require denying requests for religious accommodation to change MPIN's, the Navy's own policy mandates that the decision-maker at least consider whether an accommodation is possible based on the factors set forth in SECNAVINST 1730.8. *See* SECNAVINST 1703.8(4).

According to the appropriate procedures, Carmichael's request should have been submitted to his commander or commanding officer for consideration pursuant to Secretary of the Navy Instruction 1730.8. We have no evidence on the record before us that Carmichael's commander received this request, or that he made or would have made any response to it. Further, we also cannot infer from the record that the CNP or Deputy CNP properly considered Carmichael's request as a religious accommodation request under the factors dictated by Secretary of the Navy Instruction 1730.8, or that the CNP or Deputy CNP would have denied Carmichael's request based on those factors. The only evidence before us is the Deputy CNP's letter to Carmichael denying his request to change his MPIN number, and the "Memorandum for Deputy Chief of Naval Personnel" prepared by Sigrid M. Staton, which recommends disapproval of

Carmichael's request. Neither of these documents makes any reference to religious accommodation or the factors set forth in Secretary of the Navy Instruction 1730.8. Therefore, there is no evidence in the record that Carmichael's request procedurally was treated as a request for religious accommodation, or that it would have been denied had it been so treated. The Navy JAG review of religious accommodation, requested and followed by the BCNR, is not conclusive because it was made after the fact, apparently by a lawyer based on the same record available to us, who was not authorized by Secretary of the Navy Instruction 1730.3 to make such a determination.

We therefore remand for a hearing to determine Carmichael's claim. The trial court must determine whether at the time Carmichael sought religious accommodation, the Navy "wrongfully" failed to follow its own rules and procedures in considering his request (e.g., whether the agency had "no lawful authority" for its action, see *Roskos*, 549 F.2d at 1389–90), and whether any such failure "directly caused" Carmichael's separation, see *id.* at 1389. If these conditions are met, the trial court then must evaluate whether "a reasonable employee confronted with the same circumstance would feel coerced into resigning," *Middleton v. Dep't of Defense*, 185 F.3d 1374, 1379 (Fed.Cir.1999), and whether the Navy can show that it would have taken the same action after following proper procedures.

We have stated that an employee could not reasonably feel coerced into resigning where an agency's legitimate actions merely produced "unpleasant working arrangements" or a "distasteful set of alternatives," see *Roskos*, 549 F.2d at 1390; *Staats v. United States Postal Service*, 99 F.3d 1120, 1124 (Fed.Cir.1996). However, an agency's violation of its own procedures that would force an employee to breach his or her deeply-felt religious convictions if the employee remained in the service is not *per se* insufficient to cause an involuntary separation. *Cf. Roskos*, 549 F.2d at 1389 (holding that the hardship of employee's reassignment from Scranton to Philadelphia should only be borne if the reassignment was proper; where the reassignment was wrongful and relocation was difficult, employee's subsequent retirement was rendered involuntary).

## II.

■ We may quickly dispose of Carmichael's arguments concerning the remaining two factors in the *Christie* test for voluntariness. We agree that the trial court erred in holding that Carmichael did not show that he had no alternative to discharge, because the court did not take into account that Carmichael's alternatives might have been limited by a wrongful denial of the Navy's religious accommodation policy. Waiting indefinitely for the Social Security Administration to change his Social Security number may not have been a viable alternative for Carmichael if it would require a continued breach of his religious conviction.

■ Finally, the trial court also erred in holding that Carmichael did not address the first prong of the *Christie* test: that Carmichael involuntarily accepted the terms of the government. While his argument was not extensive, Carmichael did argue below that he involuntarily accepted the government's terms that the only way he could remain a Naval service member was to sign a reenlistment contract identifying him by Social Security number:

> "[A]t no time did Plaintiff tender his resignation or indicate in any way that he desired to be separated from the Navy. Rather, he did everything he could, short of signing the reenlistment

contract identifying him by SSN to fulfill his contract obligations to reenlist. He was prevented from doing so because he was advised that his signature on a reenlistment contract without the identifying social security number would be 'null and void.' "

Carmichael's attempts to remain in the military by orally swearing to fulfill a new term of service, and seeking to sign a contract that did not list his Social Security number, must be taken into account.

We therefore vacate the Court of Federal Claims' dismissal of Carmichael's case and remand for proceedings consistent with this opinion.

*VACATED and REMANDED.*