**Darryl W. RISER, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 09–712C.

United States Court of Federal Claims.

June 29, 2010.

Darryl W. Riser, pro se, Houston, TX.

Alex P. Hontos, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Captain Patrick Grant, Department of the Army, United States Army Litigation Division, Arlington, VA.

## *OPINION AND ORDER*

LETTOW, Judge.

Plaintiff, formerly a Major in the U.S. Army Reserves, has sought relief from this court in the form of back pay and correction of an allegedly unlawful discharge. Compl.

Introduction, ¶ 1–3. Previously, plaintiff, Mr. Riser, brought his claims before the Army Board for Correction of Military Records ("Army Correction Board" or "the Board") in May 2004, which denied him relief, prompting him to file suit in this court. Here, as he had before the Board, Mr. Riser seeks reinstatement to his position in the U.S. Army Reserves and back pay for training he claims to have attended, along with compensatory and punitive damages related to his allegedly unlawful discharge. The parties initially filed cross-motions directed to the merits of the Board's decision, but briefing of those motions disclosed problematic aspects of the administrative record on which the Board had acted.

The administrative record of the proceedings before the Army Correction Board was filed with the court on February 19, 2010, pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC"). Thereafter, the government filed a motion to dismiss or for judgment on the administrative record, Mr. Riser filed a motion for summary judgment, and a hearing was held on March 29, 2010.[1] The case then evolved to the point where it currently is before the court on plaintiff's motion to supplement the administrative record and defendant's cross-motion to remand or, in the alternative, for judgment upon the administrative record. As recast by these motions and briefs, the case has been readied for decision.

### FACTS[2]

At the time of his discharge in late 2003, Mr. Riser had served in the U.S. Army Reserves for over 17 years. AR 3 (Record of Proceedings of Army Correction Board (Nov. 30, 2004)); Compl. at 4.[3] In October of 2003,

---

1. Mr. Riser's motion for summary judgment was a procedurally improper means of addressing the merits of his claims. *See* RCFC 52.1 Rules Committee Note (2006 Adoption) ("Summary judgment standards are not pertinent to judicial review upon an administrative record."). In part because Mr. Riser was acting *pro se,* the court addressed the nature of his filing at the hearing held on March 29, 1010, and allowed both Mr. Riser and the government to submit supplemental motions and briefs which more directly joined issue on the questions that had arisen as a result of the briefs filed prior to the hearing.

2. The recitation of facts is drawn from the administrative record filed in this case pursuant to RCFC 52.1(a). *See Santiago v. United States,* 75 Fed.Cl. 649, 653 (2007) ("In accord with RCFC 52.1, the court 'is required to make factual findings ... from the [administrative] record as if it were conducting a trial on the record.' " (quoting *Acevedo v. United States,* 216 Fed.Appx. 977, 979 (Fed.Cir.2007))).

3. Citations to the administrative record will be to "AR——."

plaintiff requested a transfer to the Individual Readiness Reserve, which was denied. *See* Pl.'s Supp. Br. Ex. A (Communication between then-Major Riser and Lieutenant Colonel Ruben Ordonez). Following this denial, plaintiff resigned from his military position in November of 2003 and was honorably discharged in December 2003. AR 3 (Record of Proceedings); Pl.'s Supp. Br. Ex. H (Mem. of Resignation (Nov. 8, 2003)); Pl.'s Supp. Br. at 4. The parties dispute the nature of this resignation, primarily because plaintiff avers that it was involuntary despite the facially voluntary nature of his resignation letter. *See* Pl.'s Supp. Br. Ex. D (Pl.'s Aff. in Support of Coerced Resignation). In March 2004, Mr. Riser filed suit against his former military unit and commander in the United States Bankruptcy Court, Southern District of Ohio, seeking compensatory and punitive damages. AR 3 (Record of Proceedings). That court dismissed his claims in June 2004. *See* AR 3–4 (Record of Proceedings), AR 9–10 (Bankruptcy Court Order (June 3, 2004)). In May 2004, Mr. Riser filed an application with the Army Correction Board claiming that his resignation was coerced and requesting relief in the form of back pay, correction of his military records to obtain a 20–year retirement letter, compensatory damages, reinstatement of his military identification card, a copy of his personnel file, and a reprimand of his former commander. AR 14 (Application for Correction of Military Record (May 6, 2004)). The Board denied his requested relief on November 30, 2004, *see* AR 7 (Record of Proceedings), and nearly five years later, on October 20, 2009, Mr. Riser filed suit in this court.

Mr. Riser raises the same claims and requests the same relief in this court as he did before the Army Correction Board. In his complaint, Mr. Riser claims that he: (1) was involuntarily and improperly terminated from the Army Reserves, (2) was involuntarily dis-enrolled from a Command and General Staff Course, (3) was improperly denied back pay for training service in September and October of 2003, (4) has been denied access to his military records, and (5) has been discriminated against on the basis of his race. Compl. Introduction, ¶¶ 1–5; *see also* Pl.'s Supp. Br. at 5–8, 13 (providing a summary of allegedly coercive actions preceding Mr. Riser's resignation). Mr. Riser requests reinstatement in the Army Reserves and in a Command and General Staff Course, back pay, and compensatory and punitive damages totaling $300,000. *See* Compl. at 14; Pl.'s Supp. Br. at 14. Mr. Riser further requests a correction of his military records regarding his retirement points and years of service, *see* Compl. at 11, as well as a written apology. *See* Compl. at 14.

Most of Mr. Riser's claims appear to stem from alleged discrimination. He avers that he was the victim of multiple instances of racial harassment, which he reported in four Equal Opportunity ("EO") complaints. Compl. at 4, Ex. A (Army EO Complaints). Mr. Riser asserts that filing the EO complaints caused his superiors to take negative action against him, denying his transfer request to the Individual Readiness Reserve, threatening him with an out-of-state transfer, and finally coercing him to leave the service altogether. *Id.* at 4–8.

Although the Army Correction Board addressed and denied his claims, Mr. Riser contends that the Board was unable to properly adjudicate his claims because the administrative record did not include e-mail correspondence between plaintiff and his superior, Lieutenant Colonel Ordonez. Pl.'s Supp. Br. at 13.

### STANDARDS FOR DECISION

A federal court's jurisdiction must be established as a threshold matter before the court may reach the merits of any action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The party asserting jurisdiction, in this instance Mr. Riser, bears the burden of establishing that the court has jurisdiction over the subject matter of his complaint. *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir. 1998).

When determining whether subject matter jurisdiction exists, federal courts are bound to accept as true the facts alleged in

the complaint and to draw all reasonable inferences in favor of the plaintiff. *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995). Nevertheless, the factual assertions presented in a plaintiff's claim for relief must at least be plausible for the court to accept them, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (finding that factual allegations "must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *see also Cambridge v. United States,* 558 F.3d 1331, 1335 (Fed.Cir.2009). If, having applied these standards, the court concludes that it lacks subject matter jurisdiction over the complaint, it must either dismiss the action as a matter of law, *see Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985), or transfer it to a different federal court that would have jurisdiction. *See Gray v. United States,* 69 Fed.Cl. 95, 98, 102–03 (2005) (applying 28 U.S.C. § 1631).

The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded ... upon the Constitution, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1). The Tucker Act does not, however, provide a substantive right to relief and, standing alone, is insufficient to grant jurisdiction to this court. *See, e.g., United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Martinez v. United States,* 333 F.3d 1295, 1302–03 (Fed.Cir.2003) (en banc). In essence, the Tucker Act acts as a waiver of the government's sovereign immunity for certain money-mandating claims. *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (finding that the Tucker Act serves to waive the United States' immunity for claims that "'can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment for the damage sustained.'") (quoting *Testan,* 424 U.S. at 400, 96 S.Ct. 948); *see also United States v. White Mountain Apache Tribe,* 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) ("[A] fair inference will

do."). Consequently, to assert jurisdiction in this court under the Tucker Act, the plaintiff's claim must rely on a money-mandating statute or other source of law. If the plaintiff successfully identifies a substantive source of law that may be interpreted as mandating payment from the United States for the injury endured and makes "a nonfrivolous assertion that [he or she] is within the class of plaintiffs entitled to recover under the money-mandating source, [then] the Court of Federal Claims has jurisdiction." *Jan's Helicopter Serv., Inc. v. Federal Aviation Admin.,* 525 F.3d 1299, 1307 (Fed.Cir. 2008).

This court's role in reviewing military cases is a limited one. *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir. 2002) (emphasizing the court's narrow role with respect to "decisions as to the composition, training, equipping, and control of a military force") (internal quotation omitted); *see also Groves v. United States,* 47 F.3d 1140, 1144 (Fed.Cir.1995) ("[N]o court is qualified to review the substantive merits of a decision [committed to the discretion of the military], so long as the decision comports with any procedural standards mandated by statute or regulation."). "It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province[,] and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983); *see also Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979) (stating that in reviewing military cases, this court does not sit as "a super correction board").

As plaintiff, Mr. Riser "bears the burden of establishing by 'cogent and clearly convincing evidence' that the [Board's] decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Colon v. United States,* 71 Fed.Cl. 473, 484 (2006) (quoting *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986)), *aff'd sub nom. Acevedo v. U.S.,* 216 Fed.Appx. 977; *see also Chambers v. United States,* 417 F.3d 1218,

1227 (Fed.Cir.2005); *Fisher v. United States,* 402 F.3d 1167, 1180–81 (Fed.Cir.2005); *Heisig,* 719 F.2d at 1156; *see generally* 5 U.S.C. § 706(2). The standard of review applied by this court in these cases "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig,* 719 F.2d at 1157. In reviewing a military board's decision under the substantial evidence rule, "*all* of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion." *Id.*[4]

### ANALYSIS

#### A. Motion to Supplement the Record

The parties' exchange of briefs on the merits disclosed that documentary materials relevant to the decision were not put before the Board. These materials initially were supplied to the court by Mr. Riser, who subsequently made a motion to supplement the administrative record that was before the Board with the pertinent documents. *See* Pl.'s Mot. To Supplement Record. The materials consist of six pages of e-mail communications between Lieutenant Colonel Ordonez and then-Major Riser ("the resignation correspondence"). *See id.* Attach. 4. These e-mails bear on Mr. Riser's decision to resign, his request for a transfer to the Individual Readiness Reserve, and the supposed coercive tactics he alleges his superiors used against him. A declaration by the records custodian of the Army Correction Board, Conrad V. Meyer, establishes that the resignation correspondence was not considered by the Board in its decision. Def.'s Resp. to Pl.'s Supp. Br., Opp'n to Pl.'s Mot. to Supplement Record, and Def.'s Mot. to Remand ("Def.'s Resp. to Pl.'s Mot. to Supplement") Ex. 1, ¶ 3 (Decl. of Conrad V. Meyer (Apr. 27, 2010)); *see also* AR 14.

▆▆▆ Despite the circumstance that the resignation correspondence should have been part of the record before the Army Correction Board when it was making its

decision, it is not appropriate for this court now to supplement the record with materials that were not available to the Board. *See Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). The court's review of a military board's decision turns on the facts available to the board. In *Florida Power & Light,* the Supreme Court stated that "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision *based on the record* the agency presents to the reviewing court." *Id.* (emphasis added). The Court specified that if the administrative record is incomplete, "[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry," but rather that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* at 744, 105 S.Ct. 1598; *see also Walls v. United States,* 582 F.3d 1358, 1367–68 (Fed.Cir.2009) (vacating a trial court's decision to reject a Navy Petty Officer's claim for back pay, and remanding with instructions to remand to the Navy Correction Board for consideration of new evidence); *Knowledge Connections, Inc. v. United States,* 76 Fed.Cl. 6 (2007) (remanding a bid protest of a contractual award to the responsible agency, the General Services Administration, to consider whether the terms of the procurement were consonant with statutory authorization, an executive order, and conditions on an "executive agent" designation by the Office of Management and Budget).

▆▆▆ In *Florida Power & Light,* the Supreme Court stressed that "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." 470 U.S. at 743, 105 S.Ct. 1598 (quoting *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). Although some exceptions to this rule exist, most notably when an agency fails or omits to address

---

4. The Supreme Court has observed that the substantial evidence standard, as used in the context of judicial review of an administrative decision, necessitates "more than a mere scintilla [of evidence]. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Consolidated Edison Co. of N.Y. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *see also Titan Tire Corp. v. Case New Holland, Inc.,* 566 F.3d 1372, 1379 (Fed.Cir.2009) (quoting *Consolidated Edison* ).

or explore claims of bias or a conflict of interest, *see Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338–39 (Fed.Cir.2001) (concluding that administrative record was deficient regarding business ethics, and that supplementation was appropriate), no such exception pertains to this case. Accordingly, supplementing the administrative record and engaging in a *de novo* review of the supplementary materials is not a suitable course of action for the court in this case.[5] Mr. Riser's motion to supplement the administrative record must be denied.

### B. Motion to Remand

■■■ Although a supplementation of the administrative record is improper, the government acknowledges that the resignation correspondence should have been part of the record addressed by the Board. *See* Def.'s Resp. to Pl.'s Mot. To Supplement at 3. Accordingly, the government requests that the court remand this case to the Board, to enable the Board to adjudicate the case on a complete record. *Id.* at 4. The Army's regulations mandate that all resignation materials should be included in an individual's Official Military Personnel File, *see id.* at 3 (citing Army Regulation 600–8–104, Table 2–1 (June 22, 2004)), and the government concedes that that regulation was not followed in this instance. *Id.* The agency, having created a rule to include all resignation materials in an officer's personnel file and, in turn, to include

the personnel file in the administrative record, is bound to follow this rule. *See Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."). Thus, a remand to the Board is appropriate.

### CONCLUSION

Plaintiff's motion to supplement the record is DENIED, and the government's motion to remand is GRANTED. Pursuant to RCFC 52.2(a), the case is remanded to the Army Board for Correction of Military Records for six months. *See* RCFC 52.2(b)(1)(B). The resignation correspondence between Lieutenant Colonel Ordonez and then-Major Riser shall be added to the record before the Board, and the Board shall make a fresh decision respecting Mr. Riser's requests for relief based upon all the evidence before the Board. The case is stayed pending the results of the remand. *See* RCFC 52.2(b)(1)(C). The court requests status reports every 60 days regarding the progress of the remand. *See* RCFC 52.2(b)(1)(D).

It is so ORDERED.

---

5. In *Heisig*, the Federal Circuit among other things held that plaintiffs who brought suits under the Tucker Act or the Little Tucker Act, challenging determinations of a military correction board, were "entitled" to supplement the record before the board with additional evidence. 719 F.2d at 1157 (In suit under the Little Tucker Act, "[a]ppellant was entitled to offer *de novo* evidence in his presentations ... to the district court."); *id.* at 1156 (holding that the same evidentiary and decisional principles apply to district courts and the Court of Federal Claims in addressing cases involving military pay and benefits). *Heisig* applied precepts that had been explicated by the Court of Claims fifteen years earlier in *Brown v. United States*, 184 Ct.Cl. 501, 396 F.2d 989, 996 (1968) (addressing in comprehensive fashion the then-prevalent "established practice of accepting *de novo* evidence in the [military correction] area"). However, the record-supplementation aspect of *Heisig* and *Brown* has since been overtaken in the Federal Circuit by a reliance on *Florida Power & Light* to require

a remand to a board to consider relevant evidence that had been omitted, rather than supplementation with consequent consideration of the new evidence by the reviewing trial court. *See Walls*, 582 F.3d at 1367–60 (citing *Gillan v. Winter*, 474 F.3d 813, 817 (D.C.Cir.2007); *Metz v. United States*, 466 F.3d 991, 998 (Fed.Cir.2006); *Fisher*, 402 F.3d at 1180); *see also Martinez*, 333 F.3d at 1304–06, 1314 (stating that a service member need not seek relief from a military corrections board before suing in the Court of Federal Claims, but when a service member does pursue relief before a board, the Court of Federal Claims should apply its ordinary standard of review to the board's actions). *But see Walls*, 582 F.3d at 1369, 1376 (Newman, J., dissenting) (disagreeing with the panel majority because no Federal Circuit decision *en banc* or Supreme Court decision had overruled *Brown* ). For additional commentary on this recurring topic, *see generally Joslyn v. United States*, 90 Fed.Cl. 161, 180 n. 14 (2009).