Darryl W. RISER, Plaintiff,

v.

UNITED STATES, Defendant.

No. 09–712C.

United States Court of Federal Claims.

March 25, 2011.

Darryl W. Riser, pro se, Houston, Texas.

Alex P. Hontos, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Tony West, Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Captain John G. Doyle, Litigation Attorney, Department of the Army, U.S. Army Litigation Division, Arlington, Virginia.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff, Darryl W. Riser, formerly a Major in the U.S. Army Reserves, seeks relief from this court in the form of back pay and correction of an allegedly coerced resignation. Previously, Mr. Riser filed a complaint in this court contesting a decision by the Army Board for Correction of Military Records ("Army Correction Board" or "the Board") denying Mr. Riser relief. Thereafter, proceedings in the case revealed that the Board had acted on an administrative record that was missing materials required by Army regulation to be present. *See Riser v. United States*, 93 Fed.Cl. 212, 217 (2010). Consequently, on motion by the government, the court remanded the case to the Board with instructions that the omitted materials be added to the record before the Board, and that the Board make a fresh decision respecting Mr. Riser's claims. *See id.* at 218. With the more complete record before it, on August 19, 2010, the Board reaffirmed its prior decision denying Mr. Riser relief. AR 000003 to 000006 (Army Board for Correction of Military Records, Record of Proceedings, Docket No. AR20100013423 (Aug. 19, 2010) ("Board's Second Decision")).[1]

---

1. The second administrative record was filed with the court on November 18, 2010 in accord with Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC"). References to that

Mr. Riser contests that decision by the Board and has filed a motion for judgment on the administrative record, as well as motions to supplement that record and to sanction the government's counsel.[2] The government has filed a motion to dismiss in part for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, and for judgment upon the administrative record.

## FACTS[3]

At the time of his discharge in late 2003, Mr. Riser had served in the U.S. Army Reserves for over 17 years. *Riser*, 93 Fed.Cl. at 214. In October 2003, Mr. Riser requested and was denied a transfer to the Individual Readiness Reserve. *Id.* at 214-15. Mr. Riser thereafter resigned from the reserves in November 2003, and was honorably discharged one month later. *Id.* In his memorandum of resignation, Mr. Riser stated, "I voluntarily resign my commission." AR 000087 (Mem. of Resignation (Nov. 8, 2003)).

In May 2004, Mr. Riser filed an application with the Army Correction Board asserting that his resignation was coerced and that he had not been paid for drills which he attended during September and October of 2003. *Riser*, 93 Fed.Cl. at 215. Mr. Riser requested relief in the form of back pay, correction of his military records such that he could obtain a 20-year retirement letter, and reinstatement of his military identification card. *Id.* The Board denied his application in November of 2004, finding that Mr. Riser had not completed the 20 years of qualified service required for retirement pay or a correction of his military records nor had he submitted any evidence demonstrating that his resignation was coerced. AR 000016 to

000021 (Army Board for Correction of Military Records, Record of Proceedings, Docket No. AR20040001524 (Nov. 30, 2004) ("Board's First Decision")). The Board additionally concluded that Mr. Riser had failed to provide the Board with any evidence showing he had performed the drills in September and October of 2003. *Id.*

Mr. Riser thereafter filed suit in this court. *See Riser*, 93 Fed.Cl. at 215. The parties' exchange of briefs, however, revealed that e-mail correspondence between then-Major Riser and his commander, Lieutenant Colonel Ordonez, leading up to and regarding Mr. Riser's decision to resign ("resignation correspondence") was not put before the Board, contrary to Army Regulation 600–8–104, Table 2–1 (June 22, 2004). *Id.* at 217–18. The court denied Mr. Riser's motion to supplement the record with those materials, instead remanding the case to the Board for consideration of Mr. Riser's claims in light of a complete record. *Id.* at 218.

Upon remand the Board once again denied Mr. Riser's application, stating that the new evidence showed that Mr. Riser "initiated a voluntary request to resign." Board's Second Decision at 3. The Board concluded from the resignation correspondence that Lieutenant Colonel Ordonez "attempted to work with" Mr. Riser, offering support and assistance to Mr. Riser in his resignation request while also advising Mr. Riser "to seek legal counsel." *Id.* at 3–4. The Board additionally decided that "no evidence of record or independent evidence provided by [Mr. Riser] in his original submission to th[e] Board or in the messages now provided to the Board ... suggest[s that Mr. Riser] was in any way the subject of institutional or command racial or religious bias or discrimination." *Id.* at 4.

record are designated as "AR ——." The record is paginated sequentially.

2. Initially, in an apparent effort to seek judicial review of the Board's decision on remand, Mr. Riser filed a motion for reconsideration under RCFC 60(b). The court denied Mr. Riser's motion as procedurally improper, noting that Mr. Riser was required to invoke RCFC 52.2(f) to contest the Board's remand decision. *See Riser v. United States*, 2010 WL 3528894 (Fed.Cl. Sept.2, 2010). Mr. Riser thereafter gave appropriate notice under RCFC 52.2(f)(1), and the

court then entered a schedule for submission of the administrative record in accord with RCFC 52.1(b) and for briefing of disposition motions based upon that record.

3. The recitation of facts is drawn from the administrative record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed.Cir.2005) ("The [c]ourt ... is required to make factual findings under [what is now RCFC 52.1] from the record evidence as if it were conducting a trial on the record.").

In seeking review of the Board's Second Decision, Mr. Riser renews his claim that his resignation was coerced and revives his requests for back pay relating to his allegedly involuntary resignation and back pay for drills he asserts he attended in September and October of 2003. *See* Pl.'s Mem. in Support of Mot. for Judgment on the Administrative Record ("Pl.'s Mem.") at 5–14. He asserts that the Board's most recent decision denying him relief on these grounds was *"arbitrary* ... [and] capricious, unsupported by substantial evidence, and contrary to law because it failed to consider [Mr. Riser's] *submitted* evidence." Pl.'s Mot. for Judgment on the Administrative Record ("Pl.'s Mot.") at 1.

## ANALYSIS

### A. *Jurisdiction*

"Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action." *OTI Am., Inc. v. United States,* 68 Fed.Cl. 108, 113 (2005) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). The Tucker Act grants this court jurisdiction over claims "against the United States" founded upon, among other things, "any Act of Congress." 28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act itself does not create a substantive cause of action; ... to come within the jurisdictional reach and the waiver of the Tucker, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir. 2005) (*en banc* portion). Where a plaintiff alleges that a statute provides the right to money damages, "the statute [must] be fairly interpreted or reasonably amen[ ]able to the interpretation that it mandates a right of recovery in damages." *Adair v. United*

*States,* 497 F.3d 1244, 1250 (Fed.Cir.2007) (quoting *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003)) (internal quotations omitted).

Section 206(a) of Title 37 governs pay for members of the military reserve and is a money-mandating statute. *See Dehne v. United States,* 970 F.2d 890, 892 (Fed.Cir. 1992). As a former member of the U.S. Army Reserve, Mr. Riser may rely upon this statute as a source of jurisdiction in this court.[4]

### B. *Motion to Dismiss for Failure to State a Claim*

*Pro se* plaintiffs such as Mr. Riser "are given some leniency in presenting their case, [but] their pro se status does not immunize them from pleading facts upon which a valid claim can rest." *Hutchens v. United States,* 89 Fed.Cl. 553, 560 (2009). A complaint will survive a motion to dismiss for failure to state a claim if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. When considering such a motion, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States,* 558 F.3d 1331, 1335 (Fed.Cir.2009). Legal conclusions and "recitals of the elements of a cause of action," however, are not entitled to a presumption of truth. *Iqbal,* 129 S.Ct. at

---

**4.** Mr. Riser cites to a number of other statutes, including the Back Pay Act, 5 U.S.C. § 5596, the Federal Torts Claim Act, 28 U.S.C. § 2674, the federal-question jurisdictional statute, 28 U.S.C. § 1331, and the provision of the code governing the statute of limitations in this court, 28 U.S.C. § 2501. *See* Pl.'s Mem. at 8–9, 14. The Back Pay Act applies to civil service federal employees, not members of the reserve units of the military,

*see Dehne,* 970 F.2d at 892, the Federal Torts Claims Act does not engender jurisdiction in this court because tort claims are excluded from this court's jurisdiction, *see* 28 U.S.C. § 1491(a)(1), and 28 U.S.C. § 1331 confers federal-question jurisdiction on the district courts. Additionally, the timeliness of Mr. Riser's claim is not disputed in this case.

1949. In the context of Tucker Act jurisdiction, where a "plaintiff's case does not fit within the scope of the [money-mandating] source," the court must dismiss the case for failing to state a claim on which relief can be granted. *Fisher*, 402 F.3d at 1175–76.

■ Military pay claims are divided into two categories: those brought by "service members serving on full-time active duty[,]" and those brought by "persons not in full-time active duty service[,]" or, in other words, members of the reserves or National Guard. *Palmer v. United States*, 168 F.3d 1310, 1313–14 (Fed.Cir.1999). While the former group of persons is entitled to pay "[b]y virtue of their status," the latter group is only paid for drills actually attended and training actually performed. *Id.* at 1314; *see* 37 U.S.C. § 204(a)(2); 37 U.S.C. § 206(a)(1). "The consequence of this difference in pay entitlement between full-time active duty personnel and those serving part-time reserve duty is that a member who is serving in part-time reserve duty in a pay billet or was wrongfully removed from one, has no lawful pay claim against the United States for unattended drills or for unperformed training duty." *Palmer*, 168 F.3d at 1314; *see also Dehne*, 970 F.2d at 894; *Reilly v. United States*, 93 Fed.Cl. 643, 649 (2010); *Greene v. United States*, 65 Fed.Cl. 375, 380–81 (2005).[5] These rules apply even when a reservist alleges that the military has acted unlawfully and thereby wrongfully prevented his performance of such duties. *See Palmer*, 168 F.3d at 1313 ("The [g]overnment asserts that ... [e]ven if the transfer was wrongful, in the absence of [petitioner's] actually having performed duties for which the [g]overn-ment is obligated to pay, there is no debt for which the [g]overnment is liable.... The [g]overnment is correct.").

As noted, Mr. Riser was an officer in the United States Army Reserve. He has not alleged that he attended drills or performed trainings subsequent to his discharge on December 1, 2003. Consequently, Mr. Riser lacks any lawful pay claim against the United States from December 1, 2003 to the present, whether or not his resignation was coerced or otherwise involuntarily made. *See Palmer*, 168 F.3d at 1314.[6] Because Mr. Riser alleges that he indeed attended the drills in September and October of 2003, those allegations state a cognizable claim.

### C. *Motions for Judgment upon the Administrative Record*

■ The court's role in reviewing military cases is a limited one. *See Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed.Cir.2002); *Doe v. United States*, 132 F.3d 1430, 1433–34 (Fed.Cir.1997). Mr. Riser must "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Doe*, 132 F.3d at 1434. Mr. Riser must show that the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. *Id.; see also Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir.2005). In accordance with this deferential standard of review, the court does not "reweigh[ ] ... the evidence" but rather considers "whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed.Cir.1983). So long as the Board consid-

---

5. An exception to this general rule applies for reserve officers who do not attend drills or training due to physical disability, *see* 37 U.S.C. § 206(a)(3), but this exception does not appertain to the instant case.

6. Notably, "[a] presumption of voluntariness generally exists where an employee tenders his resignation." *Carmichael v. United States*, 298 F.3d 1367, 1372 (Fed.Cir.2002). A plaintiff can rebut this presumption by showing that the resignation was actually a product of coercion or duress. *Id.* The administrative record, including the resignation correspondence, reveals that Mr. Riser's allegations of coercion lack evidentiary foundation, and, indeed, the resignation corre-spondence indicates that those statements of Lieutenant Colonel Ordonez that Mr. Riser char-acterizes as amounting to threats and coercive tactics were merely statements notifying Mr. Ris-er of the realities of war-time footing and efforts on the part of Lieutenant Colonel Ordonez to assist and accommodate Mr. Riser in his resigna-tion. *See* AR 000022–000024 (E-mail from Lt. Col. Ordonez to then-Major Riser (Nov. 8, 2003)). Thus, Mr. Riser failed to rebut the presumption of voluntariness attached to his resignation. In sum, the Board's decision finds substantial evi-dentiary support within the administrative rec-ord for the proposition that Mr. Riser's resigna-tion was not coerced but rather was voluntary.

ered the relevant evidence and came to a reasonable conclusion, this court will not disturb the Board's decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99, 104–05, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1058 (Fed.Cir.2000).

In reviewing the parties' cross-motions for judgment upon the administrative record, "the court asks whether, given all the disputed and undisputed facts, a party has met its burden, based on the evidence in the record." *A & D Fire Prot., Inc. v. United States,* 72 Fed.Cl. 126, 131 (2006) (citing *Bannum,* 404 F.3d at 1356). Facts that are in contention will not preclude judgment on a motion made under Rule 52.1(c); rather, the court resolves such questions by reference to the administrative record. *See Bannum,* 404 F.3d at 1357.

■ Mr. Riser alleges that the Board erred in denying pay for drills he allegedly performed in September and October of 2003 because it failed to consider evidence Mr. Riser offered in support of this claim. Pl.'s Mot. at 1. In its first decision, the Board concluded that "the applicant has submitted no evidence to show that he performed drills and is entitled to drill pay for September and October 2003 and compensatory damages. The [Board] may only pay claims for amounts due to applicants as a result of correction of military records; therefore, the applicant is not entitled to the requested relief." Board's First Decision at 5. In its second decision, the Board restated its first finding and concluded that the new evidence before it did not provide a sufficient evidentiary basis to support any of Mr. Riser's requested relief. Board's Second Decision at 3–4.[7]

The administrative record does not contain any evidence that Mr. Riser attended drills or military training for pay in September or October of 2003. Although the resignation correspondence refers generally to drills held during October and an apparent related dispute arising between then-Major Riser and Lieutenant Colonel Ordonez regarding then-Major Riser's attendance at the Command and General Staff College, *see, e.g.,* AR 000022–000026 (E-mail from Lt. Col. Ordonez to then-Major Riser (Nov. 8, 2003)), the court can ascertain no evidence in the record to contravene the Board's finding that Mr. Riser failed to provide evidence to prove he attended for pay drills held in September and October of 2003. Indeed, there is evidence in the record affirmatively indicating that Mr. Riser was absent from at least one of his required drills around the pertinent time period. *See* AR 000023 (E-mail from Lt. Col. Ordonez to then-Major Riser (Nov. 8, 2003)) ("If you want to resign your commission, I will excuse and not count [the] missed drill against you."). In light of the dearth of evidence Mr. Riser presented in

---

7. Mr. Riser appears also to claim that the Board did not actually have before it additional evidence Mr. Riser had submitted to the Board in connection with the Board's proceedings on remand. Attached to one of Mr. Riser's filings are exhibits that appear to show that Mr. Riser sent to the Board on July 10, 2010, a package of supporting evidence. *See* Pl.'s Mot. for Further Proceedings Ex. B (Letter from Mr. Riser to Conrad V. Meyer, Director, Army Review Boards Agency (Aug. 26, 2010)), Ex. C (Letter from Rick A. Schweigert, Chief, Congressional and Special Actions, Army Review Boards Agency, to Mr. Riser (Aug. 25, 2010)). Mr. Riser avers that this evidence was received by the Board but was placed in the file of a different case that Mr. Riser filed with the Board in April 2010, case number AR2010–0013423, rather than the file associated with the case remanded from this court, case number AR2004–0001524. *See id.*

A review of the Board's decisions resolves the apparent confusion. The Board's initial decision rendered on November 30, 2004 was assigned case number AR2004–0001524. *See* Board's First Decision at 1. The Board's second decision, however, lists its docket number as AR2010–0013423 and states that it "[i]ncorporate[s] herein by reference [the] military records which were summarized in the previous consideration of [Mr. Riser's] case by the [Board] in [d]ocket [n]umber AR20040001524 on 30 November 2004." Board's Second Decision at 1. Thus, it appears that evidence Mr. Riser mailed to the Board was placed in the evidentiary file that the Board had before it when considering the remanded claims. Some documentary nonevidentiary materials related to the proceedings before this court and to abandoned claims may have been omitted by the Board, but that circumstance would not have affected the Board's consideration of Mr. Riser's claims on remand.

this context, the Board's conclusion is reasonable and supported by substantial evidence.[8] The Board's decision on remand thus "affords a satisfactory basis for disposition of the case." RCFC 52.2(f)(1)(A).

### D. *Motion to Strike and for Sanctions*

Finally, Mr. Riser takes issue with the government's response to his motion for judgment, asserting that the government mischaracterizes Mr. Riser's allegations. Specifically, Mr. Riser contends that his case at this juncture "does *not* involve: (a) tort claims, (b) civil rights claims, (c) equitable relief unrelated to money judgment, or (d) [an] issue related to qualifying years of retirement." Pl.'s Mot. to Strike at 1. To that end, Mr. Riser has moved to strike the portions of the government's response that addresses these claims and to sanction the government's counsel pursuant to RCFC 11 for improperly characterizing Mr. Riser's claims.

The request to strike is improper as a legal matter because the reference to which objection is made does not occur in a "pleading." RCFC 12(f); *see Entergy Nuclear Fitzpatrick, LLC v. United States,* 93 Fed.Cl. 739, 742 (2010); *Reunion, Inc. v. United States,* 90 Fed.Cl. 576, 580 (2009); *Boston Edison Co. v. United States,* 64 Fed.Cl. 167, 180 n. 15 (2005). As to sanctions, while Mr. Riser intends now to abandon claims that were quite plainly raised in his initial complaint, *see* Compl. at 2, 4–8, 12, it cannot reasonably be inferred that the government intended any "improper purpose" in mentioning those claims in its briefing of this further

review after remand. *See Dumont v. United States,* 85 Fed.Cl. 425, 431 (2009), *aff'd,* 345 Fed.Appx. 586 (Fed.Cir.2009) (A motion for sanctions will be granted only if "there is any evidence a party intended some improper purpose by the presentation of the relevant submission."). Mr. Riser's motion to strike and for sanctions is accordingly denied.

### CONCLUSION

For the reasons stated, plaintiff's motion for judgment on the administrative record is DENIED. Defendant's motion to dismiss in part and for judgment upon the administrative record is GRANTED.[9] The clerk shall enter judgment in accord with this disposition.

No costs.

It is so ORDERED.

---

**8.** In yet a further effort to bolster the administrative record, Mr. Riser seeks to add to that record various materials including e-mail correspondence, an affidavit by Mr. Riser, a compact disk containing voicemail messages, letters exchanged between Mr. Riser and the Board, and Mr. Riser's prior application to the Board. *See* Pl.'s Mot. to Supplement the Administrative Record at 1; Pl.'s Mem. at 16 (listing putative supplementation). As the court noted in its prior decision denying a similar motion by Mr. Riser, "[t]he court's review of a military board's decision turns on the facts available to the board." *Riser,* 93 Fed.Cl. at 217. "[T]he focal point for judicial review should be the administrative record *already in existence, not some new record made initially in the reviewing court." Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (quoting *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36

L.Ed.2d 106 (1973)) (internal quotations omitted) (emphasis added); *see also Riser,* 93 Fed.Cl. at 217–18 (explaining that some exceptions to this rule exist, but none are applicable to Mr. Riser's case). Mr. Riser's motion to supplement the administrative record is accordingly denied.

Apart from legal impediments, the motion to supplement is unavailing for a practical reason. Mr. Riser's putative supplementation is already contained within the administrative record, with the exception of one compact disk containing voicemail messages extracted from Mr. Riser's answering machine plus an affidavit by Mr. Riser. These voicemail messages and the affidavit provide no added support for Mr. Riser's claims.

**9.** In addition, plaintiff's motion to strike and for sanctions is DENIED, as is his motion to supplement the administrative record.