NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3032

SHADDIE C. SHABAZZ,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

_____

DECIDED:    September 30, 2005
_____

Before CLEVENGER, RADER, DYK, Circuit Judges.

PER CURIAM.

Petitioner Shaddie C. Shabazz ("Shabazz") seeks review of the decision of the Merit Systems Protection Board ("Board"), affirming her removal from her position as Recreational Specialist by the respondent, the United States Department of Justice, Federal Bureau of Prisons ("Agency").  Shabazz v. Dept. of Justice, No. AT0752040464-I-1 (M.S.P.B. July 26, 2004).  Finding no reversible error in the Board's decision, we affirm.

BACKGROUND

On October 17, 1993, Shabazz began employment as a correctional officer at the Federal Correctional Institution ("FCI") in Estill, South Carolina. She was promoted to the position of Recreational Specialist on January 5, 1997.

Shabazz's conduct prompted disciplinary action on two occasions, both times for violations of section 9(c) of the Bureau of Prison's "Standards of Employee Conduct," which states that an "employee may not offer or give to an inmate or a former inmate or any member of his or her family, or to any person known to be associated with an inmate or former inmate, any article, favor, or service, which is not authorized in the performance of the employee's duties." J.A. at 206.

The first incident resulted in a reprimand. On July 25, 1999, Shabazz was observed alone with an inmate in the education building of the prison, and later that evening was seen leaving the hobby craft area with that same inmate, at a time when the inmate should have been in the housing unit for the nightly inmate count. As a result of this incident, on July 18, 2000, she received a letter of reprimand.

The second alleged incident resulted in her removal. The agency alleged that during January 2001, Shabazz wrote letters and sent money orders to inmate Keith Walton's mother, Deanna Walton, that Ms. Walton then forwarded to her son. The agency further alleged that Shabazz took Ms. Walton and her niece to dinner in January 2001. These allegations were based on (1) an analysis of the letters and money orders by a Forensic Document Examiner, Marvin Dawson; and (2) testimony of Deanna Walton identifying petitioner as the individual who contacted her. The allegations were supported by evidence that the return address on the letters was the address of one of Shabazz's relatives, and that the name on the return address was her maiden name.

On July 17, 2002, a final decision letter notified Shabazz that she would be removed from her position effective July 18, 2002. After her removal, on August 21, 2002, Shabazz filed an Equal Opportunity Employment ("EEO") complaint alleging that

her removal was in retaliation for filing two previous EEO grievances. The Complaint Adjudication Office ruled on March 2, 2004, that the evidence did not support her EEO claims.

Shabazz timely appealed the Bureau of Prison's removal action to the Board. A hearing before an administrative judge ("AJ") included testimony of several witnesses, including Deanna Walton and Shabazz. On July 26, 2004, the AJ affirmed the agency's action. That decision became final on August 30, 2004. Shabazz timely filed her petition to this court on April 1, 2005. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The Board's decision must be affirmed unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); Yates v. Merit Sys. Prot. Bd., 145 F.3d 1480, 1483 (Fed. Cir. 1998).

I

To sustain the removal, the agency was required to prove three elements: (1) that the charged conduct occurred; (2) that there was a nexus between the conduct and the efficiency of the service; and (3) that the penalty imposed was reasonable. See 5 U.S.C. §§ 7513(a), 7701(c)(1)(B) (2000); Pope v. United States Postal Serv., 114 F.3d 1144, 1147 (Fed.Cir.1997). Shabazz does not dispute the nexus between the alleged conduct and the efficiency of the service, but she disputes the other two elements.

Shabazz argues that the Board's finding that the charged conduct occurred is not supported by substantial evidence, because the AJ "did not fairly consider the contradictions in Ms. Walton's testimony which effectively destroy her credibility." Credibility determinations are "virtually unreviewable" on appeal. See, e.g., Hambsch v. Dept. of Treasury, 796 F.2d 430, 436 (Fed. Cir. 1986). Having reviewed the alleged contradictions in Ms. Walton's testimony, we conclude that they were not so significant as to render the Board's determination "unsupported by substantial evidence."

We also find that the administrative judge's evaluation of expert testimony regarding document analysis was supported by substantial evidence. In reaching its conclusion that the agency's expert was more credible than Shabazz's, the AJ carefully considered both experts' qualifications, and their respective analyses.

For the above reasons, we conclude that the Board did not err in finding that the alleged conduct occurred.

Shabazz also asserts that her removal was an unreasonable penalty. Shabazz's burden in proving her penalty unreasonable is a heavy one: "deference is given to the agency's judgment unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." Parker v. United States Postal Serv., 819 F.2d 1113, 1116 (Fed. Cir. 1987) (internal quotation marks omitted). Here, we cannot conclude that the Board erred in sustaining the penalty of removal. Inappropriate conduct by a prison official with an inmate's family is a very serious offense which, as the Board asserted, "could have placed her and others at risk," particularly in light of the "charged inmate atmosphere found in many federal

05-3032                                                 4

facilities." J.A. at 12. See Watson v. Dept. of Justice, 64 F.3d 1524, 1530 (Fed. Cir. 1995) ("Law enforcement officers are held to a higher standard of conduct than are other federal employees"). Moreover, the Board found that petitioner had concealed her misconduct.

Shabazz also argues that her punishment was based on the improper consideration of prior disciplinary action, in violation of an agency guideline, the "Standard Schedule of Disciplinary Offenses and Penalties" ("Schedule"), which states that "[t]he reckoning period is defined as that period of time following the date management becomes aware of the offense during which that offense can be used to determine the sanction for a subsequent offense." J.A. at 2. She alleges that the July 2000 reprimand fell outside the two year reckoning period. Although both the Board and the deciding official, Warden Maldonado, considered the prior offense as evidence that Shabazz was on notice that her conduct was a violation of the rules, the Board was persuaded by Maldonado's testimony that he did not consider the prior disciplinary action in arriving at the penalty. The Board did not err in concluding that the guideline was not violated because the agency may rely on actions outside the reckoning period for the limited purpose of establishing notice of the prohibited conduct.

II

Shabbaz also claims that she was punished in reprisal for two prior EEO complaints. Under 5 U.S.C. § 2302(b)(9), it is a prohibited practice to take a personnel action against an employee because of the exercise of any "grievance right granted by any law, rule, or regulation." To prevail on an allegation of illegal reprisal for exercising grievance rights under 5 U.S.C. § 2302(b)(9), Shabazz must show: (1) she filed a

grievance protected under § 2302(b)(9); (2) the accused official knew of the grievance; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the grievance. See Warren v. Dept. of the Army, 804 F.2d 654, 656-58 (Fed. Cir. 1986).

The record discloses that Shabazz filed two grievances: first, a sex discrimination compliant against her supervisor, Ken Jones, in July 1997; and second, a gender discrimination complaint in August 2000. The administrative judge found that Shabazz had failed to establish a genuine nexus. The complaints were not directed to the conduct of the deciding official, Warden Maldonado. Although Maldonado knew of Shabbaz's EEO complaints from conversations with the Human Resources Office, the AJ was persuaded that the prior complaints played no role in his decision. That decision is supported by substantial evidence.

Shabazz also alleges that the agency committed procedural error by proposing disciplinary action prior to the conclusion of the agency investigation, and prior to review by the Chief Executive Officer, and that these errors violate the collective bargaining agreement ("CBA"). The CBA provides: "[w]hen an investigation takes place on an employee's alleged misconduct, any disciplinary or adverse action arising from the investigation will not be proposed until the investigation has been completed and reviewed by the Chief Executive Officer or designee . . ." J.A. at 9-10. However, assuming petitioner is correct that the procedure was violated, the Board found that she failed to allege that the agency would have reached a different conclusion if the procedure had been followed. Where, as here, the final agency decision is subject to judicial review, it is well settled that agency error is harmful only where the record shows

that the procedural error was likely to have affected the agency's conclusion. See 5 U.S.C. 7701(c)(2)(A) (2000); Carmichael v. United States, 298 F.3d 1367, 1375-76 (Fed. Cir. 2002); Sargisson v. United States, 913 F.2d 918, 922-23 (Fed. Cir. 1990). But cf. Wagner v. United States, 365 F.3d 1358, 1364-65 (Fed. Cir. 2004) (different rule applies where final agency decision unreviewable). We are not persuaded that the Board erred in concluding that the petitioner "failed to prove harmful error." J.A. at 9. Nor do we believe that the Board erred in concluding that the CBA did not "require that an employee be permitted to respond to the charges under investigation prior to the issuance of the proposal notice." J.A. at 10.

## CONCLUSION

For the foregoing reasons, the Board's decision is affirmed.

## COSTS:

No costs.