NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SHELLY V. FRANK,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-2105

---

Appeal from the United States Court of Federal Claims in No. 1:23-cv-01296-MBH, Senior Judge Marian Blank Horn.

---

Decided:  January 21, 2026

---

WOJCIECH KORNACKI, Pentagon Law Office, Washington, DC, argued for plaintiff-appellant.

DANIEL FALKNOR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, DOUGLAS K. MICKLE; BREIER WILLIAM SCHEETZ, Office of the Judge Advocate General, General Litigation Division, United States Department of the Navy, Washington, DC.

_____

Before PROST, CHEN, and STARK, *Circuit Judges.*

STARK, *Circuit Judge.*

Shelly Frank was a Commander in the U.S. Navy and was on a list for promotion to the rank of Captain. She was removed from the promotion list after the Navy found she had improperly handled a dispute with an enlisted officer. As Commander Frank had not reached the rank of Captain and was no longer on the promotion list, she was required to retire after 28 years of service as an officer. She filed papers with the Navy requesting retirement approximately four months before completing 28 years of qualifying service and, hence, retired with 27 years, 7 months, and 27 days of naval officer service.

Commander Frank filed suit in the Court of Federal Claims, alleging she had been involuntarily retired. She sought reinstatement in the Navy, return to the promotion list, correction of Navy records relating to the incident with the enlisted officer, and compensatory damages, including backpay and benefits. The Court of Federal Claims concluded that she failed to state a claim on which relief could be granted and dismissed her complaint. She now appeals. We affirm.

I

Shelly Frank enlisted in the U.S. Navy Reserves on June 7, 1993 and served four months and 12 days in active service between October 1993 and March 1994. She was commissioned as an officer on March 4, 1994. During her years in service, she achieved the rank of Commander. In early 2016, she was added to a list for potential promotion to the rank of Captain.

On September 4, 2016, Commander Frank assumed duties as the Chief of the Cryptologic Services Group European Command ("CSG EUCOM"). Shortly after starting in

this role, disputes arose between her and the Senior Enlisted Leader ("SEL") of that unit, who was an enlisted member of the U.S. Army. On October 14, 2016, Commander Frank relieved the SEL from his post for cause. On October 18, 2016, the SEL filed a complaint with the Navy's Inspector General challenging his removal. The subsequent investigation found that Commander Frank had removed the SEL without coordinating the action with either her own operational chain of command or the SEL's chain of command in the Army; it concluded she was derelict in the performance of her duties because she acted without authority. On February 17, 2017, Commander Frank was detached from her position as Chief of CSG EUCOM due to "loss of confidence in her ability to effectively perform her duties in that position." Appx7 (internal quotation marks omitted); *see also* Appx220-21.

On February 22, 2017, Commander, Navy Personnel Command, delayed Commander Frank's promotion. The next day the Chief of Naval Operations recommended that Commander Frank be removed from the Captain promotion list. Commander Frank filed a complaint with the Navy Inspector General on March 21, 2017, challenging her detachment from CSG EUCOM. In her complaint, Commander Frank argued that her detachment was not completed through the proper regulatory process, that her actions with respect to the SEL had been coordinated with the proper authorities, and that she was not given an opportunity to improve. The Inspector General rejected Commander Frank's complaint.[1] On May 30, 2019, the Chief of Naval Operations again recommended that Commander Frank be removed from the Captain promotion list, and the Secretary of the Navy did so on June 12, 2019.

---

[1] Commander Frank requested reconsideration, which was also rejected.

Meanwhile, Commander Frank also filed a petition with the Board for Corrections of Naval Records ("BCNR"). The petition requested the removal of her detachment for cause, expungement of a subsequent adverse fitness report, and promotion to the rank of Captain. The BCNR denied the petition on June 26, 2019.

On February 9, 2021, Commander Frank submitted a request for retirement with an effective date of November 1, 2021. She made her submission via the Navy Standard Integrated Personnel System ("NSIPS"). Had she not requested retirement, she would have been mandatorily retired on April 1, 2022, the first day of the month after she reached the maximum 28 years of service as an officer without being promoted to Captain and without being on the list for promotion to the rank of Captain. The Navy approved Commander Frank's retirement request. In the approval comments, the Navy personnel office noted Commander Frank's mandatory retirement date of April 1, 2022.

Commander Frank retired on November 1, 2021, as she requested. As of that date, Commander Frank had accrued 27 years, 7 months, and 27 days of active-duty service as a commissioned Navy officer. Despite the fact that Commander Frank's mandatory retirement date was April 1, 2022, her "certificate of release or discharge from active duty" mistakenly listed "Maximum Service or Time in Grade" as the "narrative reason for separation." Appx1434.

On January 11, 2021, about a month before Commander Frank submitted her retirement papers, she repetitioned the BCNR, requesting that her name be restored to the promotion list and that various naval records be corrected. After her retirement, Commander Frank supplemented that BCNR petition to add, as further requested relief, that she be restored to active duty. In recommending no corrective action, the BCNR noted that Commander

Frank had "reached her mandatory retirement date" at some unspecified date "subsequent to her [January 2021] submission" "but before her application had been adjudicated" by the BCNR. Appx66. As the Secretary of the Navy adopted the BCNR's recommendation of no corrective action on February 10, 2022, the BCNR records mistakenly suggest Commander Frank's mandatory retirement date was before February 10, 2022 and, thus, before April 1, 2022.

Commander Frank filed suit in the Court of Federal Claims in August 2023. She alleged that the Navy improperly detached her for cause from CSG EUCOM and that the detachment prevented her from being fairly considered for promotion to the rank of Captain. In her complaint, Commander Frank requested retroactive restoration to the Captain promotion list, back pay based on such retroactive restoration, leave, and allowances, all pursuant to the Military Pay Act, 37 U.S.C. § 204, which entitles active duty military personnel to basic pay associated with their rank.[2] The Court of Federal Claims dismissed the complaint, concluding she had failed to state a claim under § 204 because

---

[2] 37 U.S.C. § 204(a) provides:

The following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service computed under section 205 of this title – (1) a member of a uniformed service who is on active duty; and (2) a member of a uniformed service, or a member of the National Guard who is not a Reserve of the Army or the Air Force, who is participating in full-time training, training duty with pay, or other full-time duty, provided by law, including participation in exercises or the performance of duty under [various related sections.]

her retirement from the Navy before reaching 28 years of maximum active commissioned service was presumptively voluntary and she had not alleged facts sufficient to overcome that presumption. The court further determined that her claims were non-justiciable, since they were predicated on challenging the Secretary of the Navy's discretionary decision to remove Commander Frank from the promotion list.

The Court of Federal Claims had jurisdiction under 28 U.S.C. § 1491. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

Whether the Court of Federal Claims properly dismissed a "complaint for failure to state a claim upon which relief could be granted is an issue of law which we review de novo." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009). In reviewing a motion to dismiss, we must take all well-pled factual allegations of the complaint as true. *See Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

"[T]he issue of the voluntariness of a plaintiff's separation [from military service], a necessary requirement for a separated-plaintiff's case to fit within the scope of 37 U.S.C. § 204, is properly addressed under a Rule 12(b)(6) motion to dismiss . . . ." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). "[I]f a plaintiff cannot establish that [s]he is currently on active duty, [s]he must assert and ultimately establish that [her] separation was involuntary in order to fit within the scope of, and take advantage of, the money-mandating status of § 204, or else [her] claim falls for failure to state a claim upon which relief can be granted." *Id.*

## III

### A

Commander Frank argues that the Court of Federal Claims erred in dismissing her claim because she plausibly alleged that her retirement from the Navy was involuntary. It is undisputed that when Commander Frank filed her complaint on August 10, 2023, she was not on active duty. Moreover, because Commander Frank requested retirement, her retirement is presumed to be voluntary. *See Carmichael v. United States,* 298 F.3d 1367, 1372 (Fed. Cir. 2002) ("A presumption of voluntariness generally exists where an employee tenders his resignation or retires; the plaintiff bears the burden of coming forward with evidence to demonstrate that his resignation or retirement was not voluntary."). Therefore, to state a claim for relief under § 204, Commander Frank had to plausibly allege sufficient facts to rebut that presumption. We agree with the trial court that she failed to do so.

A service member can rebut the presumption that her retirement or resignation was voluntary if she can "demonstrate that: (1) [s]he involuntarily accepted the terms of the government; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of the government's coercive acts." *Id.* Taking the well-pled factual allegations in the complaint as true, Commander Frank failed to adequately allege at least the first of these required elements.

Commander Frank argues that her resignation was involuntary because she submitted resignation papers only due to the operation of 10 U.S.C. § 633, which provides that a Commander in the Navy "who is not on a list of officers recommended for promotion to the regular grade of . . . captain . . . shall, if not earlier retired, be retired on the first day of the month after the month in which [s]he completes 28 years of active commissioned service." 10 U.S.C. § 633(a). "[A]ctive commissioned service" is not defined by

statute.　However, Secretary of the Navy Instruction 1920.6D, encl. (2), ¶ 12 defines "active commissioned service" as consisting only of service as a "commissioned officer." Thus, Commander Frank's time as an enlisted service member between October 22, 1993 and March 3, 1994 does not count toward her maximum of 28 years of "active commissioned service," since she was not a commissioned officer during that time.

As a matter of law, then, § 633 would not result in Commander Frank being mandatorily retired until April 1, 2022 – the first day of the month after which she would have completed 28 years of active commissioned service as a Naval officer – which was several months beyond the date of her requested retirement, November 1, 2021. Commander Frank insists that her request to retire on November 1, 2021 was the result of her miscalculation of her mandatory retirement date. We accept this well-pled factual contention as true.[3] She also emphasizes that the mistake was not hers alone, as two naval offices issued statements consistent with the understanding that her mandatory service date was before April 1, 2022. *See* Appx816, Appx1434. These mistakes do not, however, make her retirement involuntary.

Commander Frank's submission of a request for retirement was entirely unnecessary to effectuate the mandatory retirement following 28 years of active commissioned

---

[3] In addition to being a well-pled factual allegation, Commander Frank's contention that she made a good-faith miscalculation of her mandatory retirement date is supported by the undisputed fact that her first day of active service as an enlisted member was October 22, 1993, meaning she reached 28 years of combined service in October 2021. If her enlisted service had counted toward the 28 years, her mandatory date of retirement would have been the first day of the following month, i.e., November 1, 2021.

service.  Navy Military Personnel Manual 1810-020 instructs that "[f]or officers with mandatory/statutory retirement due to failure of selection for promotion, maximum years of service, selective early retirement or age, a request is not needed or desired unless an earlier retirement date is desired."  Had Commander Frank intended to await the mandatory separation compelled by operation of § 633, no action on her part was necessary; she needed simply to wait for that maximum date to arrive.  The only reason Commander Frank has offered for why she filed a request for retirement on November 1, 2021, when she believed she was going to be mandatorily retired on that same date anyway, is because this might help her "get quicker to the court."   Oral Argument at 6:00-7:06, available at: https://www.cafc.uscourts.gov/oral-arguments/24-2105_01 092026.mp3.  Even if true (and she does not explain how it would be), Commander Frank's voluntary filing of unnecessary papers, requesting that her retirement become effective months earlier than her mandatory separation date, prevents her from overcoming the presumption that her separation was voluntary.

## B

Commander Frank analogizes her situation to the one we confronted in *Adkins v. United States*, 68 F.3d 1317 (Fed. Cir. 1995).  We are not persuaded.

Lieutenant Colonel Adkins had been informed that he would be involuntarily retired pursuant to a different statute, 10 U.S.C. § 638a.  *See id.* at 1319-20.  As we explained there:

> Pursuant to 10 U.S.C. § 638(b)(1)(A), an officer "recommended for early retirement under . . . section 638a" shall "be retired, under any provision of law under which he is eligible to retire, on the date requested by him and approved by the Secretary concerned."  *Section 638a(e) provides that the "retirement of an officer pursuant to this section shall*

> *be considered to be involuntary for purposes of any*
> *other provision of law.*"  10 U.S.C. § 638a(e) (1994).
> We conclude that Adkins's retirement was "pursu-
> ant to" § 638a and therefore involuntary for the
> purpose of establishing Tucker Act jurisdiction.

*Id.* at 1321 (emphasis added).  Unlike § 638a, which ex-
pressly provides that retirement in a situation like Lt. Col.
Adkins' is treated as "involuntary," § 633, the statute gov-
erning Commander Frank's circumstances, contains no
such provision.  *Adkins*, then, is of no help to Commander
Frank.

Commander Frank's situation is more analogous to the
one we addressed in *Sammt v. United States*, 780 F.2d 31
(Fed. Cir. 1985).  Major Sammt had been informed by the
Army that "he would be placed on the retired list effective
December 1, 1977, unless he requested voluntary retire-
ment." *Id.* at 31-32.  Major Sammt then requested that he
"be relieved from active duty . . . on 31 October 1977, and
placed on the retired list on 1 November 1977." *Id.* at 32.
Thereafter, Major Sammt brought suit in the Court of Fed-
eral Claims, requesting back pay and the correction of rec-
ords.  After the court entered judgment against Major
Sammt, he appealed and we held the Court of Federal
Claims lacked jurisdiction because "the exercise of an op-
tion to retire is not rendered involuntary by the imminent
imposition of a less desirable alternative." *Id.*  We added
that there was "no fact dispute on the question of whether
Sammt chose to voluntarily retire," so "whatever reason"
he had for doing so "rather than await[ing] mandatory (in-
voluntary) retirement" was immaterial. *Id.* at 33.  Our con-
clusion is the same with respect to Commander Frank,
who, for whatever reason, chose to request voluntary re-
tirement ahead of the date she would otherwise have been
mandatorily, and involuntarily, retired.

Thus, Commander Frank has failed to plausibly plead
that she involuntarily accepted the terms of the

government.  For at least this reason, dismissal of her complaint was proper.

## IV

Commander Frank additionally argues that the Court of Federal Claims erred because it failed to convert the government's motion to dismiss to a motion for summary judgment, which she contends was required because the court relied on documents outside of her complaint.  In particular, Commander Frank faults the court for considering her NSIPS request for retirement but not providing her an opportunity to present additional evidence.  Had she been advised by the court that she needed to come forward with more evidence regarding involuntariness, she would, she asserts, have done so.

Even assuming, without deciding, Commander Frank is correct, the procedural error she identifies is harmless. Commander Frank has not identified any additional evidence that she was unable to present that would have led to a different result in her case.  The two mistaken references in her personnel records to her mandatory retirement date being prior to April 1, 2022 – in the narrative statement of reasons contained in her certificate of release or discharge from active duty, and in the BCNR denial of her 2021 petition – are, by operation of law, mistakes, as we have explained.  Any error the trial court may have committed in considering or not considering those mistakes did not prejudice Commander Frank and is, hence, harmless. *See generally P.R. Elec. Power Auth. v. Action Refund*, 515 F.3d 57, 65-66 (1st Cir. 2008) (holding that where "the appellant cannot demonstrate such prejudice – by establishing that it was unable to present evidence in support of its position as a result of the unfair surprise – the failure to provide notice is harmless error and a remand would be futile").

## V

Commander Frank's requests to correct her military records, such as her detachment, also lack merit. The authority of the Court of Federal Claims to correct military records is narrowly circumscribed. The court may do so only to the extent the correction is "incident of and collateral to" a money judgment. 28 U.S.C. § 1491(a)(2); *see also James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (holding that "equitable relief must be 'an incident of and collateral to' a money judgment"). Even if Commander Frank's detachment was removed, and her other records were expunged, she would not be entitled to the rank of Captain, or even to return to the promotion list, as these are matters within the discretion of the Secretary of the Navy. *See Adkins*, 68 F.3d at 1324.

## VI

We have considered Commander Frank's remaining arguments and find they lack merit. Accordingly, for the foregoing reasons, we affirm the Court of Federal Claims' dismissal of her complaint.

**AFFIRMED**

COSTS

No costs.